**Rezi P. FORSHEY, Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.**

No. 99–7064.

United States Court of Appeals, Federal Circuit.

April 1, 2002.

🔑168

🔑168

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, KS, for claimant-appellant.

Virginia M. Lum, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent-appellee. With her on the brief were David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel on the brief were Donald E. Zeg-

lin, Deputy Assistant General Counsel, and David J. Barrans, Staff Attorney, Department of Veterans Affairs, of Washington, DC.

Michael P. Horan, Paralyzed Veterans of America, of Washington, DC, for amicus curiae Paralyzed Veterans of America. With him on the brief was Linda E. Blauhut.

Robert V. Chisholm, Chisholm Chisholm & Kilpatrick LLP, of Providence, Rhode Island, for amicus curiae National Organization of Veterans' Advocates.

Stephen B. Kinnaird, Sidley & Austin, of Washington, DC, for amicus curiae National Veterans Legal Services Program. With him on the brief were Ronald S. Flagg, and Heather M. Walloch. Of counsel on the brief was Barton F. Stichman, National Veterans Legal Services Project, of Washington, DC.

Before MAYER, Chief Judge, NEWMAN, MICHEL, LOURIE, CLEVENGER, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge DYK, in which Circuit Judges LOURIE, CLEVENGER, RADER, SCHALL, BRYSON, GAJARSA, LINN, and PROST join. Circuit Judge MICHEL also joins except for Part I–F. Dissenting opinion filed by Chief Judge MAYER, in which Circuit Judge NEWMAN joins.

DYK, Circuit Judge.

On February 5, 2001, we granted rehearing en banc to consider the scope of our jurisdiction in cases coming to this court from the Court of Appeals for Veterans Claims under 38 U.S.C. § 7292, and the prudential rules that should govern the exercise of that jurisdiction where it exists.

■ We conclude that we have jurisdiction under section 7292(a) over: (1) issues concerning the validity of statutes or regulations on which the decision of the Court of Appeals for Veterans Claims depended; (2) issues of interpretation if the Court of Appeals for Veterans Claims elaborated the meaning of a statute or regulation and the decision depended on that interpretation; (3) issues of validity or interpretation raised before the Court of Appeals for Veterans Claims but not explicitly decided, if the decision would have been altered by adopting the position that was urged; and (4) other "relevant" questions of law. Our decisions in *Smith v. West*, 214 F.3d 1331 (Fed.Cir.2000), *cert. denied*, 531 U.S. 1144, 121 S.Ct. 1080, 148 L.Ed.2d 956 (2001), and *Belcher v. West*, 214 F.3d 1335 (Fed.Cir. 2000), *cert. denied*, 531 U.S. 1144, 121 S.Ct. 1080, 148 L.Ed.2d 956 (2001), are modified to the extent, if any, that they are inconsistent with this new approach on jurisdictional issues.

■ We also hold that, even when jurisdiction exists, prudential considerations should severely limit the exercise of our authority to consider issues not raised or decided below. In this particular case, we affirm the judgment of the Court of Appeals for Veterans Claims.

## BACKGROUND

The appellant, Rezi P. Forshey, is the widow of Charles O. Forshey, who served in the United States Navy from 1975 until his death on August 19, 1990. Mr. Forshey died while he was on active duty from injuries that he sustained in a motorcycle accident. Immediately preceding the accident, Mr. Forshey was riding his motorcycle on a winding rural road when he went off the road around a turn and crashed into a boulder. A police report stated that at the time of the accident, it was daylight, the weather was clear, and the road was

dry. The report also noted that there was no sign of a mechanical failure of the motorcycle or its tires. Based on witness accounts, the police estimated that Mr. Forshey was traveling at not more than thirty miles per hour in a twenty mile per hour zone. A toxicology report from an autopsy performed the day after Mr. Forshey died showed that Mr. Forshey had a blood alcohol level of 0.139%. Apparently, the Navy views a blood alcohol level of 0.10% or higher as creating a presumption that the person is under the influence of alcohol. A Navy accident report dated August 29, 1990, stated that alcohol was a contributing factor to the accident. The report further concluded that Mr. Forshey suffered a broken neck and died instantly. However, the Navy report did not determine the ultimate cause of the accident.

In order for a spouse to receive veterans' benefits, the veteran's death generally must have been service-connected. *See* 38 U.S.C. § 1310 (2000).[1] For the death to be service-connected, the death must be caused by an injury that occurred in the line of duty. *See* 38 U.S.C. § 101(16) (2000). Section 105(a) of title 38 creates a presumption of service connection for injuries or diseases that occur while a veteran is on active duty. Section 105(a) provides in pertinent part:

> An injury or disease incurred during active military, naval, or air service *will be deemed* to have been incurred *in line of duty* and not the result of the veter-

an's own misconduct when the person on whose account benefits are claimed was, at the time the injury was suffered or disease contracted, in active military, naval, or air service, whether on active duty or on authorized leave, *unless* such injury or disease was a result of the person's own *willful misconduct* or abuse of alcohol or drugs.

38 U.S.C. § 105(a) (2000) (emphases added).

Thus the presumption of service connection may be overcome if the government establishes that the veteran's own willful misconduct or abuse of alcohol or drugs[2] caused the injury leading to his death. The Secretary of Veterans Affairs has promulgated a regulation that defines "willful misconduct" in this context. 38 C.F.R. § 3.301(c)(2) (2001). The regulation provides that if "intoxication results proximately and immediately in disability or death, the disability or death will be considered the result of the person's willful misconduct." 38 C.F.R. § 3.301(c)(2) (2001).[3] Section 5107(b) of title 38 established the "benefit of the doubt" rule. It provides in pertinent part:

> The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding

1. The pertinent non-jurisdictional statutes and regulations are cited to the current edition and have not changed in any material way since 1990.

2. Neither the Board of Veterans' Appeals nor the Court of Appeals for Veterans Claims addressed whether there was an abuse of alcohol by Mr. Forshey, which would itself rebut the presumption of service connection. Nor does the Secretary of Veterans Affairs raise that issue on appeal. As a result, we consider

only whether Mr. Forshey's actions constituted willful misconduct.

3. 38 C.F.R. § 3.301(c)(2) provides in pertinent part: "The simple drinking of alcoholic beverage is not of itself willful misconduct.... If, in the drinking of a beverage to enjoy its intoxicating effects, intoxication results proximately and immediately in disability or death, the disability or death will be considered the result of the person's willful misconduct."

any issue material to the determination of a matter, the Secretary shall give the *benefit of the doubt* to the claimant.

38 U.S.C. § 5107(b) (West Supp.2001) (emphasis added).

The Department of Veterans Affairs Regional Office in Phoenix, Arizona, denied appellant's claim because it concluded that Mr. Forshey's death was proximately caused by his intoxication, which itself constituted willful misconduct.

Ms. Forshey appealed the decision of the Regional Office to the Board of Veterans' Appeals ("BVA"). The BVA applied a preponderance of the evidence standard stating that "the [Court of Appeals for Veterans Claims] has noted that, in light of the 'benefit of the doubt' rule established by 38 U.S.C.A. § 5107(b) (West 1991), 'the preponderance of the evidence must be against the claim for benefits to be denied.' *Gilbert v. Derwinski*, 1 Vet.App. 49, 53–54 (1990)." [4] *In re Forshey*, No. 94–07–681, slip op. at 8 (Bd.Vet.App. May 31, 1996). Examining all of the evidence, including "negative evidence," which "eliminates any other possible cause for the accident except for alcohol," the BVA concluded that "because the preponderance of the evidence demonstrates that alcohol was the proximate cause of the veteran's death, and the veteran's death consequently the result of his own willful misconduct, the appellant's claim for entitlement to service connection for the cause of the veteran's death must be denied." *Id.* at 12–13.

On appeal to the Court of Appeals for Veterans Claims, Ms. Forshey argued that the BVA had improperly interpreted 38 U.S.C. § 105(a) and 38 C.F.R. § 3.301(c)(2) to permit reliance on "negative evidence" to rebut the presumption of service connection. The Court of Appeals for Veterans Claims rejected this argument, stating:

In reaching its conclusion that intoxication was the proximate cause of the veteran's death, the Board considered what it referred to as "negative evidence," which is the evidence tending to disprove the existence of an intervening cause of the accident other than alcohol consumption. This included evidence indicating that the road surface was dry, that the weather was clear, that it was broad daylight, and that there was no apparent malfunction of the motorcycle.... The appellant argues that the Board impermissibly used this negative evidence to conclude that intoxication was the proximate cause of the accident.

... [T]he Board acted properly in considering this evidence.

*Forshey v. West*, 12 Vet.App. 71, at 74 (Vet.App. 1998). Based on the "negative evidence," the Court of Appeals for Veterans Claims found that the Board's decision was not clearly erroneous and affirmed.

At the Court of Appeals for Veterans Claims, appellant did not question the preponderance of the evidence standard; indeed, she assumed that it applied. *Id.* at 76. The Court of Appeals for Veterans Claims did not specifically address whether a preponderance of the evidence standard should be applied, but did apply that standard. *Id.* In addressing the applicable standard of proof, the Court of Appeals for Veterans Claims, citing *Gilbert*, 1 Vet.App.

---

**4.** *Gilbert* analyzes the interplay between the preponderance of the evidence standard and the "benefit of the doubt" rule. *Id.* at 53. [I]f a fair preponderance of the evidence is against a veteran's claim, it will be denied and the 'benefit of the doubt' rule has no application; if the veteran establishes a claim by a fair preponderance of the evidence, the claim will be granted and, again, the rule has no application; if, however, the play is close, *i.e.,* 'there is an approximate balance of positive and negative evidence,' the veteran prevails by operation of 38 U.S.C. [§ 5107(b) ]. *Id.* at 56.

at 53–54, noted that "twice in its decision the Board recognized that 'in light of the benefit of the doubt rule [section 5107(b) ], the preponderance of the evidence must be against the claim for benefits to be denied.' Nonetheless, the Board concluded that the preponderance of the evidence was against the claim." *Id.* (citations omitted). The court concluded that "[a]ccordingly, the Board did not fail to consider the benefit of the doubt rule in the appellant's case." *Id.*

On appeal to this court, the appellant continued to press her argument that the statute and the regulation did not permit the consideration of "negative evidence," but instead required that the government present "affirmative evidence" to rebut the statutory presumption of service connection set forth in 38 U.S.C. § 105(a). She argued that "the [Court of Appeals for Veterans Claims] interpreted both 38 U.S.C. § 105(a) and 38 C.F.R. § 3.301(c)(2) to allow the use of negative evidence ... to establish the proximate cause of the veteran's death," and that "[s]uch an interpretation clearly contravenes established case law regarding a party's affirmative duty to present evidence necessary to rebut a presumption."

However, for the first time appellant also urged that 38 C.F.R. § 3.301(c)(2) was invalid because it failed to establish a standard of proof and that 38 U.S.C. § 5107(b) required that the government overcome the presumption of service connection by clear and convincing evidence rather than by a preponderance of the evidence. She claimed that the government misconstrued 38 U.S.C. § 5107(b) as providing a standard of proof, when it actually only provided a rule for weighing evidence.

The panel decision in this case did not address the "negative evidence" issue. Instead, it concluded that this court had jurisdiction under 38 U.S.C. § 7292(a) to consider the applicability of a clear and convincing evidence standard because "the [Court of Appeals for Veterans Claims] implicitly relied on 38 U.S.C. § 5107(b)" in applying a preponderance of the evidence standard. *Forshey v. Gober,* 226 F.3d 1299, 1302 (Fed.Cir.2000), *vacated by* 239 F.3d 1224 (Fed.Cir.2001).

On reaching the merits, the panel noted that 38 U.S.C. "§ 5107(b) sets out not a standard of proof, but a rule for weighing evidence material to a claim." *Id.* at 1304. As such, the preponderance of the evidence standard, which had been read into section 5107(b), was inapplicable. Instead, "the benevolent intent behind the veterans system" supported the conclusion that "a showing of clear and convincing evidence to the contrary is ... [required] to rebut the presumption of service-connection afforded a veteran under 38 U.S.C. § 105." *Id.* at 1305. The panel decision remanded to the Court of Appeals for Veterans Claims for consideration under a clear and convincing evidence standard. *Id.* Judge Schall, relying on *Smith* and *Belcher,* dissented and urged that this court did not have jurisdiction over the clear and convincing evidence issue because this issue was not decided by the Court of Appeals for Veterans Claims or raised in that court. *Id.* at 1306 (Schall, J., dissenting). Judge Schall also concluded that "[e]ven absent the jurisdictional impediment, [he] would be disinclined for prudential reasons to consider the issues raised by Ms. Forshey because they were not raised before the [Court of Appeals for Veterans Claims]." *Id.* at 1307 (Schall, J., dissenting).

On February 5, 2001, we granted the government's petition for rehearing en banc, and vacated the panel opinion. We asked the parties to brief the following issues for purposes of the rehearing en banc:

1. Is the rationale and holding in this case consistent with the rationale and holdings in *Smith* and *Belcher?*
2. If the rationale and holding in this case is not consistent with the rationale and holdings in *Smith* and *Belcher*, should *Smith* and *Belcher* be overruled?
3. If *Smith* and *Belcher* are not overruled, are the rationale and holdings in those cases consistent with the rationale and holding in *In re Bailey?*
4. If the rationale and holdings in *Smith* and *Belcher* are not consistent with the rationale and holding in *In re Bailey,* which of *Smith* and *Belcher* or *In re Bailey* should be overruled?

Oral argument was held on October 3, 2001.

### DISCUSSION

I *Jurisdiction*

#### A

Section 7292 governs our jurisdiction. It is lengthy and provides in pertinent part:

(a) After a decision of the United States Court of Appeals for Veterans Claims is entered in a case, *any party to the case may obtain a review of the decision with respect to the validity of any statute or regulation* (other than a refusal to review the schedule of ratings for disabilities adopted under section 1155 of this title) *or any interpretation thereof* (other than a determination as to a factual matter) *that was relied on by the Court in making the decision.* Such a review shall be obtained by filing a notice of appeal with the Court of Appeals for Veterans Claims within the time and in the manner prescribed for appeal to United States courts of appeals from United States district courts.

\* \* \*

(c) The United States Court of Appeals for the Federal Circuit shall have *exclusive jurisdiction* to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision. The judgment of such court shall be final subject to review by the Supreme Court upon certiorari, in the manner provided in section 1254 of title 28.

(d)(1) *The Court of Appeals for the Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions.* The court shall hold unlawful and set *aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon in the decision of the Court of Appeals for Veterans Claims* that the Court of Appeals for the Federal Circuit finds to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or

(D) without observance of procedure required by law.

(2) Except to the extent that an appeal under this chapter presents a constitutional issue, the Court of Appeals *may not review* (A) *a challenge to a factual determination, or* (B) *a challenge to a law or regulation as applied to the facts of a particular case.*

(e)(1) *Upon such review, the Court of Appeals for the Federal Circuit shall have power to affirm or, if the decision of the Court of Appeals for Veterans Claims is not in accordance with law, to modify or reverse the decision* of the Court of Appeals for Veterans Claims or to remand the matter, as appropriate.

(2) Rules for review of decisions of the Court of Appeals for Veterans Claims shall be those prescribed by the Supreme Court under section 2072 of title 28.

38 U.S.C § 7292 (2000 & West Supp.2001) (emphases added).[5]

### B

This appeal comes to us against the background of our panel decisions in *Smith v. West,* 214 F.3d 1331 (Fed.Cir. 2000), *cert. denied,* 531 U.S. 1144, 121 S.Ct. 1080, 148 L.Ed.2d 956 (2001), and *Belcher v. West,* 214 F.3d 1335 (Fed.Cir.2000), *cert. denied,* 531 U.S. 1144, 121 S.Ct. 1080, 148 L.Ed.2d 956 (2001), and the Supreme Court's decision in *Sims v. Apfel,* 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). *Smith* was a case in which the veteran sought to reopen a previously denied claim on the basis of new and material evidence. The BVA and the Court of Appeals for Veterans Claims held that Smith's proffered evidence was not new and material under 38 U.S.C. § 5108, but instead was merely cumulative of previously rejected evidence. *Smith,* 214 F.3d at 1332. Smith abandoned this factual issue on appeal and urged for the first time on appeal to this court that the agency had failed to inform him of what new and material evidence was required to reopen the claim, and in particular that section 5103(a) of title 38 (providing that "the Secretary shall notify the claimant and the claimant's representative ... of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim") required such notice. *Id.* at 1333. He also urged that the failure to notify denied him due process. *Id.* This panel specifically found that the only issues appellant raised on appeal were "whether the agency misconstrued 38 U.S.C. § 5103(a) (1994), and whether it thereby violated Smith's right to due process, by failing to inform Smith as to what would constitute 'new and material evidence' of service connection." *Id.*

The panel then interpreted 38 U.S.C. § 7292(a). The panel held that "[t]he 're-lied on' language [in section 7292] ordinarily means that the issue of validity or interpretation was a part of the court's decision as indicated by its written opinion. Of course, we have held that avoidance of an issue by the veterans court, when that issue was raised below, does not deprive an appellant of the right to raise that issue again here." *Id.* Because "Smith has raised issues not presented or addressed below ... we therefore cannot address them." *Id.* at 1334. Accordingly, the panel dismissed the appeal for lack of jurisdiction. *Id.*

The Supreme Court decided *Sims v. Apfel,* shortly before our decision in *Smith,* but *Sims* was not addressed in *Smith.* In

---

5. Subsection (b), which pertains to certified questions from the Court of Appeals for Veterans Claims, is not relevant to this appeal and is omitted.

*Sims,* the Supreme Court addressed whether Sims, a Social Security claimant seeking judicial review, had waived judicial review of any issues of entitlement that she did not include in her request for review by the Social Security Appeals Council. *Sims,* 530 U.S. at 105, 120 S.Ct. 2080. The Court distinguished between court proceedings and non-adversarial administrative proceedings, and concluded that the non-adversarial nature of the Social Security proceedings dictated that a "judicially created issue-exhaustion requirement is inappropriate." *Id.* at 112, 120 S.Ct. 2080. Therefore, the Court held that Sims did not waive any issue by failing to raise it at the administrative level. *Id.*

In *Belcher,* another panel of this court held that *Sims* did not suggest that *Smith* was wrongly decided. Belcher sought benefits for psychiatric disability. *Belcher,* 214 F.3d at 1335. He was entitled to a presumption of soundness, under 38 U.S.C. § 1111, supporting his claim that his psychiatric difficulties materialized while he was in service. The presumption of soundness, however, is overcome if the Secretary can demonstrate by clear and unmistakable evidence that the condition existed before entry into service. *See* 38 C.F.R. § 3.304(b) (2001). The Court of Appeals for Veterans Claims affirmed the BVA's denial of service connection for his psychiatric disability on the ground that the Secretary had produced sufficient evidence to overcome the presumption of soundness, relying on oral statements made by Belcher. On appeal, Belcher abandoned the factual issue that had been decided by the Court of Appeals for Veterans Claims. Instead, Belcher urged reversal based on a regulatory provision, 38 C.F.R. § 3.304(b)(3), not addressed by the Court of Appeals for Veterans Claims, or argued to it. *Belcher,* 214 F.3d at 1336. That regulation provided that signed statements against interest made by veterans in service related to the origin of disease or injury cannot be held against the veteran unless the statement is independently corroborated. In this court, Belcher argued that section 3.304(b)(3) should be interpreted to include oral statements, and that under such an interpretation the Secretary could not use Belcher's statements to overcome the presumption of regularity. *Id.*

The panel followed the holding of *Smith,* in which "[w]e reasoned that where the Court of Appeals for Veterans Claims neither addresses a legal issue nor has such an issue presented to it, that court cannot be said to have 'relied on' the issue or argument 'in making its decision.'" *Id.* at 1337. The panel concluded that "[i]n this case, Mr. Belcher's [regulatory interpretation] issue was not addressed by or presented to the Court of Appeals for Veterans Claims. Accordingly, we are without jurisdiction to consider it." *Id.* The panel dismissed Mr. Belcher's appeal for lack of jurisdiction. *Id.* at 1338. The panel decided that *Sims* applied when there was no statute or regulation addressing the issue-exhaustion requirement. *Id.* at 1337. As 38 U.S.C. § 7292(a) directly addressed the issue exhaustion requirement, *Sims* was inapplicable in this context. *Id.* Specifically, the panel noted that:

> [S]ection 7292 is a jurisdictional bar to our consideration of a legal issue or argument (one directed to the validity or interpretation of a statute or regulation) on appeal absent at least one of two conditions: (1) the Court of Appeals for Veterans Claims *addressed* the issue or argument, or (2) the issue or argument was *raised* by a party to the Court of Appeals for Veterans Claims.

*Id.*

## C

For many years before the creation of the Court of Appeals for Veterans Claims

and the enactment of section 7292, judicial review of decisions of the Veterans' Administration ("VA") was almost entirely foreclosed.[6] Proposals were made to subject VA decisions to judicial review, but both the concept of judicial review and the scope of that review proved to be controversial. The debate was fueled in part by Judicial Conference opposition to court of appeals review of factual issues.[7]

The Senate bill (Senate Bill 11) was introduced on January 6, 1987, by Senator Cranston. It provided for judicial review in district court of any BVA "decision" and then subsequent appellate review of district court "decisions" in the regional circuits. Veterans' Administration Adjudication Procedure and Judicial Review Act, S. 11, 100th Cong. §§ 4025(b), 4029 (1987). This bill provided for review of factual determinations by the VA under a narrow standard. The district court was to set aside BVA factual findings "when [the finding] is so utterly lacking in a rational basis in the evidence that a manifest and grievous injustice would result if such finding were not set aside." *Id.* § 4026(a)(1)(D). The scope of review was similar to the scope proposed in bills passed by the Senate in 1981, 1983, and 1985. 134 Cong. Rec. S224 (daily ed. Jan. 6, 1987) (statement of Sen. Cranston).

The Senate Committee Report retained this approach and explained that its factual review standard "is intended to afford the maximum possible deference to the BVA's expertise as an arbiter of the specialized types of factual issues that arise in the context of claims for VA benefits, while still recognizing and providing for the possibility of error in BVA factual determinations...." S.Rep. No. 100–418, at 60 (1988). On the floor, a proposal by Senator Murkowski to limit review by courts of appeals to review of regulations and to "confine[ ] judicial review cases to questions of interpretation of statutory and constitutional law" was rejected, and in this respect the Committee bill was approved. 134 Cong. Rec. S9193, S9208 (daily ed. July 11, 1988).

On the House side, Rep. Montgomery introduced a bill (House Bill 5288) to establish a Court of Veterans Appeals. (This court is presently known as the Court of Appeals for Veterans Claims.) The Court of Veterans Appeals was authorized to review determinations of the BVA. Veterans' Judicial Review Act, H.R. 5288, 100th Cong. § 4001, *et seq.* (1988). Our court was given exclusive jurisdiction to review the Court of Veterans Appeals, but the scope of that jurisdiction was limited. *Id.* §§ 4002, 4042. Utilizing language virtually identical to that in the final bill, subsection (a) of House Bill 5288 provided that

> "any party to the case may obtain a review of the decision with respect to the validity of any statute or regulation (other than the schedule of ratings for disabilities under section 355 of this title) or any interpretation thereof (other

---

6. In *Johnson v. Robison,* 415 U.S. 361, 367, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Supreme Court carved out a narrow exception to the foreclosure rule for certain constitutional challenges to the Veterans' Administration's actions.

7. *See S. 11, The Proposed Veterans' Administration Adjudication Procedure and Judicial Review Act, and S. 2292, Veterans' Judicial Review Act: Hearing on S. 11 and S. 2292*

*Before the Senate Comm. on Veterans' Affairs,* 100th Cong. 43 (1988) (statement of Hon. Stephen G. Breyer, then-judge, U.S. Court of Appeals for the First Circuit) ("I know what I do each day, and I believe that reviewing Agency fact-finding is something I don't do very well.... And therefore, I hope that we do not have significant additional work of a sort that other institutions might perform comparatively better.").

than a determination as to a factual matter) that was relied on by the Court in making the decision."

*Id.* § 4042(a)(1)(A). Although "[t]he Court of Appeals for the Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions," this court "may not review the facts of the appeal or the application of any law or regulation to those facts unless there is presented a constitutional issue." *Id.* § 4042(b).

In supporting the preclusion of fact review, the House Report noted:

> The committee is concerned with restoring the proper balance between the executive and judicial branch with respect to the adjudication of veterans' claims. It is clear from the testimony before the committee that judges do not wish to take on the very technical and specialized task of applying a well established body of law governing the adjudication of veterans' claims to thousands of factual disagreements which arise between the VA and claimants.

H.R.Rep. No. 100–963, at 24–25 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5806. However, the report did not otherwise explain the jurisdictional language. Instead, the report largely restated the language of the bill. *Id.* at 4, 1988 U.S.C.C.A.N. at 5785 ("The reported bill ... [p]rovide[s] for review by the Court of Appeals for the Federal Circuit of any legal matter relied on by the Court of Veterans Appeals in making a decision in a particular case. This would include constitutional, statutory, and regulatory matters, and interpretations of law."); *id.* at 35, 1988 U.S.C.C.A.N. at 5818 ("The [Court of Appeals for the Federal Circuit] would have exclusive jurisdiction to review and decide any challenge to the validity of any law, regulation or interpretation thereof that was relied on by the [Court of Veterans Appeals] in making a decision in an individual case.").

The House passed House Bill 5288, as amended. 134 Cong. Rec. H9370 (daily ed. Oct. 3, 1988). The House-passed version, in all relevant respects, was the same as the bill reported by the House Committee. On October 18, 1988, the Senate and House versions were reconciled by a compromise agreement (in lieu of a conference report), which adopted the approach in the House bill. 134 Cong. Rec. S16650–60 (daily ed. Oct. 18, 1988) (explanatory statement on the compromise agreement).

> The agreement was described as follows:
>
> The validity of laws and regulations can be challenged in the U.S. Court of Appeals for the Federal Circuit.... If a veteran believes that a law or regulation is invalid on its face and if that law or regulation was germane to his claim, then the veteran can ask the Federal [C]ircuit to rule on the validity of that law or regulation. The Federal [C]ircuit cannot ... review any factual questions in the veteran's appeal. The Federal [C]ircuit cannot review whether, in a particular case, a law or regulation was applied inappropriately.

*Id.* at S16659 (statement of Sen. Murkowski).

> Having made the policy determination to preclude review of factual determinations by the [Court of Appeals for the Federal Circuit], we have recognized that the court might be tempted to review factual determinations under the guise of reviewing "mixed questions of law and fact." This is the origin of the language contained in the bill passed by the House (H.R.5288) and the amended language contained in the compromise agreement.

134 Cong. Rec. H10343 (daily ed. Oct. 19, 1988) (statement of Rep. Montgomery).

The only change (other than renumbering the sections and adding the words "United States" before "Court of Veterans Appeals") to what became the relevant language of subsection (a) was a change in the language of the parenthetical from "other than the schedule of ratings for disabilities under section 355 of this title" in the original bill to "other than a refusal to review the schedule of ratings for disabilities adopted under section 355 of this title" in the final bill. H.R. 5288, 100th Cong. § 4042(a)(1)(A) (1988); 134 Cong. Rec. S31564 (daily ed. Oct. 18, 1988). The language of subsection (a) was virtually unchanged from the time of the original House bill through final approval. *See id.* The language of subsections (c), (d) and (e) also remained essentially unchanged from the beginning to the end of the approval process.

The compromise agreement was approved by both Houses, *id.* at S16658–60, and the bill was enacted into law. Veterans' Judicial Review Act, Pub.L. No. 100–687, 102 Stat. 4105 (1988).

## D

Apart from making clear that our review was to be limited to issues of law, the legislative history sheds little light on the scope of our jurisdiction. So far as judicial jurisdiction was concerned, the focus of the legislative history was on the judicial review of facts and the application of law to fact. *See, e.g.,* 134 Cong. Rec. S16658–59 (daily ed. Oct. 18, 1988) (statement of Sen. Murkowski); 134 Cong. Rec. H10343 (daily ed. Oct. 19, 1988) (statement of Rep. Montgomery); *id.* at H10351 (explanatory statement of compromise agreement). There simply was no controversy over, or attention given to, other aspects of the jurisdictional provisions. The language of subsection (a) is barely mentioned in the House committee report [8] or the House floor debate,[9] and when it is mentioned, apart from making clear that "jurisdiction" is being conferred by subsection (a), the legislative history merely reiterates the language of the statute. The choice of the jurisdictional language in subsections (c), (d) and (e) is also not explained apart from the limitation imposed on review of facts.[10] None of the compromise agreement

---

8. *See* H.R.Rep. No. 100–963, at 4, *reprinted in* 1988 U.S.C.C.A.N. 5782, 5785 (1988) ("The reported bill ... [p]rovide[s] for review by the Court of Appeals for the Federal Circuit of any legal matter relied on by the Court of Veterans Appeals in making a decision in a particular case. This would include constitutional, statutory, and regulatory matters, and interpretations of law."); *Id.* at 35, 1988 U.S.C.C.A.N. at 5818 (1988) ("The [Court of Appeals for the Federal Circuit] would have exclusive jurisdiction to review and decide any challenge to the validity of any law, regulation or interpretation thereof that was relied on by the [Court of Veterans Appeals] in making a decision in an individual case.").

9. Rep. Lagomarsino described the "relied on" language in the original House bill: "[T]his legislation will provide for review by the Court of Appeals for the Federal Circuit of any legal matter relied on by the Court of

Veterans Appeals in making a decision in a particular case. This would include constitutional, statutory, and regulatory matters, and interpretations of law." 134 Cong. Rec. H9262 (daily ed. Oct. 3, 1988) (statement of Rep. Lagomarsino).

10. In describing the limitation on factual review, Senator Murkowski explained:

> The key to the compromise—and I cannot overemphasize this point—is the limited nature of the Federal [C]ircuit's jurisdiction.
> The compromise does not envision the Federal [C]ircuit as having general oversight of the Court of Veterans Appeals. The compromise permits the Federal [C]ircuit to review questions involving the validity of statutes and regulations as if it were reviewing them under a challenge to rulemaking. And that's it ... that's it.

134 Cong. Rec. S16659 (daily ed. Oct. 18, 1988) (statement of Sen. Murkowski).

changes to the House-passed version of what became section 7292 sheds any light on the purpose or scope of the jurisdictional language. *See supra* pp. 16–17.

■ We must therefore approach the task of interpretation based on the language of the statute itself without significant guidance from the legislative history. In doing so, we must, of course, "construe jurisdictional statutes narrowly and 'with precision and with fidelity to the terms by which Congress has expressed its wishes.'" *Bailey v. West,* 160 F.3d 1360, 1363 (Fed.Cir.1998) (quoting *Cheng Fan Kwok v. INS,* 392 U.S. 206, 212, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968)).

E

Unlike other provisions for appellate jurisdiction,[11] section 7292 does not simply create jurisdiction to review cases from the Court of Appeals for Veterans Claims. While it is clear that we have only "issue" jurisdiction and not "case" jurisdiction, the nature of our "issue" jurisdiction requires some elaboration. To determine the scope of the jurisdiction conferred we must examine various parts of the statute.

Subsection (a) of section 7292 provides for our jurisdiction by stating that "any party to the case may obtain *a review of the decision with respect to the validity of any statute or regulation* ... or *any interpretation thereof* ... that was *relied on* by the [Court of Appeals for Veterans Claims] in making the decision." 38 U.S.C.

§ 7292(a) (West Supp.2001) (emphases added). We conclude that the statute imposes somewhat different standards for validity and interpretation challenges.

■ With respect to validity challenges, the statute confers jurisdiction to "review" a decision "with respect to the validity of any statute or regulation ... that was relied on by the [Court of Appeals for Veterans Claims] in making the decision." *Id.* On the face of this provision, if there is a question as to the validity of a statute or regulation "relied on" by the Court of Appeals for Veterans Claims in making its decision, we have jurisdiction to consider the issue of validity. The question is what is meant by the term "relied on." The Supreme Court has instructed us that "[w]hen a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States,* 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). As in other areas of statutory interpretation,[12] we turn to the dictionary for assistance as to the ordinary meaning of the phrase "relied on."

The relevant dictionary definition of "rely" is "to find support: DEPEND." *Webster's Third New International Dictionary* 1919 (1976). *See also* II *The Shorter Oxford English Dictionary* 1789–90 (3d ed. 1973) ("To rest *upon* a support."). In other words, as described below, the decision below must depend in some respect

---

**11.** *See* 28 U.S.C. § 1291 (1994) ("The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States....").

**12.** *See also Humana, Inc. v. Forsyth,* 525 U.S. 299, 309–10, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999) (citing *Black's Law Dictionary* when interpreting a statutory term); *Muscarello v.*

*United States,* 524 U.S. 125, 128, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (interpreting a statutory term in light of its dictionary definition); *MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.,* 512 U.S. 218, 225–27, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994) (looking to dictionary definitions to interpret the meaning of a disputed statutory phrase); *Reves v. Ernst & Young,* 507 U.S. 170, 177–79, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) (same).

on the particular statute or regulation whose validity is called into question.

■ With respect to interpretation challenges, we are given jurisdiction under subsection (a) to review the decision "with respect to ... any interpretation [of a statute or regulation] ... that was relied on by the [Court of Appeals for Veterans Claims] in making the decision." This aspect of section 7292(a) requires us to determine what constitutes an "interpretation." At the time of the enactment of this provision in 1988 (as is the case today), *Black's Law Dictionary* defined "interpretation" as "[t]he art or process of discovering and ascertaining the meaning of a statute...." *Black's Law Dictionary* 734 (5th ed.1979). *See also Webster's Third New International Dictionary* 1182 (1976) ("the act or the result of interpreting: as ... explanation of what is not immediately plain or explicit...."); I *The Shorter Oxford English Dictionary* 1099 (3d ed.1973) (defining "interpret" as "[t]o expound the meaning of; to render clear or explicit; to elucidate; to explain.").[13] Under this definition, an interpretation of a statute or regulation occurs when its meaning is elaborated by the court. Again the "relied on" requirement demands that the particular interpretation of the statute or regulation be an interpretation on which the decision below depended. This means the "relied on" language demands that challenges to validity or interpretation can confer jurisdiction on us only if the invalidation of the

statute or regulation or the decision of the issue of interpretation as urged by appellant would have altered the outcome of the case below. We also cannot, of course, decide hypothetical questions that would not have affected the outcome of the case at the Court of Appeals for Veterans Claims. This is in keeping with the requirements of Article III which prohibits us from deciding abstract or hypothetical questions. *See, e.g., Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792). *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) ("Article III denies federal courts the power 'to decide questions that cannot affect the rights of litigants in the case before them'...."); *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) (per curiam) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.").

Finally, subsection (a) provides:

> [A]ny party to the case may obtain a *review of the [Court of Appeals for Veterans Claims'] decision with respect to the validity of any statute or regulation* ... or an interpretation thereof ... that was relied on by [that] Court in making the decision.

38 U.S.C. § 7292(a) (West Supp.2001) (emphasis added). The question here is whether the phrase "with respect to" modifies the word "review" or the word "deci-

---

**13.** *See also Paralyzed Veterans of Am. v. West*, 138 F.3d 1434, 1436 (Fed.Cir.1998) (" 'Interpretive rules' ... clarify or explain existing law or regulations...."); *Thermalloy, Inc. v. Aavid Eng'g, Inc.*, 121 F.3d 691, 692, 43 USPQ2d 1846, 1847–48 (Fed.Cir.1997) ("Claim interpretation is the process of giving proper meaning to the claim language."); *NLRB v. Sheet Metal Workers Local 104*, 64 F.3d 465, 468 (9th Cir.1995) (warning in the context of a collective-bargaining agreement against "convert[ing] every instance in which

a supervisor merely followed or applied the contract into one of contract interpretation"); *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 749 (9th Cir.1993) ("[R]eference to or consideration of the terms of a collective-bargaining agreement is not the equivalent of interpreting the meaning of the terms."); *Commercial Paper Holders v. R.W. Hine (In re Beverly Hills Bancorp)*, 649 F.2d 1329, 1333 (9th Cir.1981) ("The [process of interpretation] requires the interpreter to derive meaning from the written word....").

sion;" in other words, whether the "with respect to" phrase describes the scope of our "review" (*i.e.*, the questions that we may take up) or the scope of the "decision" below (*i.e.*, the questions that must have been addressed below). We conclude that it modifies the word "review." This seems quite clear from the use of the term "relied on" later in the sentence to specifically define the relationship that must exist between validity and interpretation issues and the decision below. The "relied on" language would have been quite unnecessary if the earlier part of the sentence before the "with respect to" language had already required that the decision below have addressed those issues.

The phrase "with respect to," should be given its natural meaning. In *Webster's Third New International Dictionary* the definition of "with respect to" is "as regards: insofar as concerns: with reference to." *Webster's Third New International Dictionary* 1934 (1976). *See also* II *The Shorter Oxford English Dictionary* 1809 (3d ed.1973) (defining "respect" as "[t]o be directed to; to refer or relate to; to deal or be concerned with"); *Black's Law Dictionary* 1179 (5th ed.1979) (defining "respective" as "[r]elating to particular persons or things, each to each; particular"). Read in context, then, subsection (a) means "any party to the case may obtain a review of the [Court of Appeals for Veterans Claims'] decision" insofar as our review "relates to" or "concerns" the "validity of any statute or regulation ... or an interpretation thereof ..." on which the decision below depended.

■ It is equally important that we make clear what section 7292(a) does not require. First, it does not require that the issue of validity or interpretation have been contested in the Court of Appeals for Veterans Claims, or even raised below as an issue in the case, so long as the Court

of Appeals for Veterans Claims' decision depended on the statute or regulation (in the case of a validity challenge) or depended on a particular elaboration of a statute or regulation (in the case of an interpretation issue). Significantly, Congress did not adopt language requiring that the issue have been "presented" to the Court of Appeals for Veterans Claims. In contrast, subsection (c) provided that "the Federal Circuit shall have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, and to interpret constitutional and statutory provisions, to the extent *presented* and necessary to a decision." 38 U.S.C. § 7292(c) (2000) (emphasis added). As the government concedes, the reference to issues "presented" refers to issues "presented" to this court. It does not refer to issues "presented" to decisions of the Court of Appeals for Veterans Claims. No similar language requires that issues be "presented" to the Court of Appeals for Veterans Claims.

It is also noteworthy that in section 7292 Congress chose not to use explicit language appearing in a variety of federal statutes limiting judicial review to issues raised below. *See Sims*, 530 U.S at 108, 120 S.Ct. 2080; *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982) ("29 U.S.C. § 160(e) ... provides that '[n]o objection that has not been urged before the Board ... shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.' "); *FPC v. Colorado Interstate Gas Co.*, 348 U.S. 492, 497–498, 75 S.Ct. 467, 99 L.Ed. 583 (1955) (Section 19 of the Natural Gas Act states that " '[n]o objection to the order of the Commission shall be considered by the court [of Appeals] unless such objection

shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do....' 52 Stat. 831—832, 15 U.S.C. § 717r (a) and (b)."); *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 36 n. 6, 73 S.Ct. 67, 97 L.Ed. 54 (1952) (collecting statutes); *Washington Ass'n for Television and Children v. FCC,* 712 F.2d 677, 681–682 and n. 6 (D.C.Cir.1983) (collecting statutes including 47 U.S.C. § 405, which states that "[t]he filing of a petition for rehearing shall not be a condition precedent to judicial review of [an FCC decision] except where the party seeking such review ... relies on questions of law or fact upon which the Commission ... has been afforded no opportunity to pass.").

 Second, when an issue of interpretation has been raised before the Court of Appeals for Veterans Claims, there is no requirement that it have been decided by that court. As *Belcher* correctly concluded, we are not limited to issues actually decided by the Court of Appeals for Veterans Claims if the issue was properly raised before that court. Instead, we have jurisdiction when "the issue or argument was *raised* by a party to the Court of Appeals for Veterans Claims." *Belcher,* 214 F.3d at 1337. *See also Smith,* 214 F.3d at 1333; *Linville v. West,* 165 F.3d 1382, 1384 (Fed. Cir.1999). Where the issue has been raised below and not addressed by the court, the issue has nonetheless been impliedly "relied on" by the Court of Appeals for Veterans Claims if the result would have been affected by adopting the position urged but not addressed. We note also that, as discussed below, pro se pleadings must be given a liberal construction when considering whether an issue has been raised for jurisdictional purposes.

In short, under subsection (a) we have jurisdiction to review a decision of the Court of Appeals for Veterans Claims if that review invokes: (1) issues concerning the validity of statutes or regulations on which the decision of the Court of Appeals for Veterans Claims depended; (2) issues of interpretation if the Court of Appeals for Veterans Claims elaborated the meaning of a statute or regulation and the decision depended on that interpretation; and (3) issues of validity or interpretation raised before the Court of Appeals for Veterans Claims but not decided, if the decision would have been altered by adopting the position that was urged.

### F

Subsection (d)(1) explains the scope of our jurisdiction under section 7292(a), charging us also with "decid[ing] all relevant questions of law." 38 U.S.C. § 7292(d)(1) (West Supp.2001). So too subsection (e) defines our "power" "[u]pon such review" and confers authority on us "to affirm or, if the decision of the Court of Appeals for Veterans Claims is not in accordance with law, to modify or reverse the decision of the Court of Appeals for Veterans Claims or to remand the matter, as appropriate." 38 U.S.C. § 7292(e)(1) (West Supp.2001). Under these provisions, our authority to decide issues of validity and interpretation extends to all "relevant" legal issues. We turn once again to the dictionary for a definition of the term "relevant." *Webster's Third New International Dictionary* defines "relevant" as "bearing upon or properly applying to the matter at hand." *Webster's Third New International Dictionary* 1917 (1976). *See also* II *The Shorter Oxford English Dictionary* 1787 (3d ed.1973) ("[b]earing upon, connected with, pertinent to, the matter in hand"); *Black's Law Dictionary* 1160 (5th ed.1979) ("[a]pplying to the matter in question").

Thus, we have jurisdiction to consider the validity or interpretation of all statutes

or regulations that "bear upon or properly apply to" the issues before us. This conclusion is hardly unusual. In the area of federal question jurisdiction, the Supreme Court has recognized that the existence of a federal question that brings the case within federal district court jurisdiction allows the court to decide all relevant questions of law. *See Siler v. Louisville & Nashville R.R. Co.*, 213 U.S. 175, 191, 29 S.Ct. 451, 53 L.Ed. 753 (1909); *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 823, 6 L.Ed. 204 (1824).[14]

To interpret the language of subsection (a) as prohibiting us from deciding relevant issues not raised before or decided by the Court of Appeals for Veterans Claims in cases properly before us would lead to anomalous results. Under this limiting interpretation, we would be barred from deciding issues newly arising because of a change in statutory or decisional law after the decision of the Court of Appeals for Veterans Claims.

We need not in this case decide how far our authority to decide other "relevant" questions of law extends. As we have noted, it certainly extends to addressing the impact of new statutes or new judicial interpretations while the case is on appeal, and it must extend as well to the interpretation of statutes or regulations which may affect the interpretation of statutes or regulations that formed the basis for the decision below or that could provide alternative grounds for the decision of the issue before the court. The question of what other interpretations are "relevant" must await another day.

In summary, while *Smith* and *Belcher* may have been correctly decided on their facts, to the extent that the decisions in *Smith* and *Belcher* are viewed as announcing a rule that is inconsistent with our holding here regarding jurisdiction, they are modified accordingly.

### G

 We must now apply these principles to the jurisdictional issues in this case. The appellant seeks to raise three issues in this court: (1) the issue of the validity of 38 C.F.R. § 3.301(c)(2) because it provides no standard of proof to rebut the presumption of service connection set forth in 38 U.S.C. § 105(a) (the "validity" issue); (2) the interpretation of 38 U.S.C. § 105(a) concerning the use of negative evidence to rebut the statutory presumption (the "negative evidence" issue); and (3) the interpretation of 38 U.S.C. § 5107(b) as to whether it includes a clear and convincing evidence standard (the "burden of proof" issue). Each of these three issues is within our jurisdiction.

**14.** *See also R.R. Comm'n of Cal. v. Pac. Gas & Elec. Co.*, 302 U.S. 388, 391, 58 S.Ct. 334, 82 L.Ed. 319 (1938) ("Because of the federal question raised by the bill of complaint, the District Court had jurisdiction to determine all the questions in the case, local as well as federal."); *Davis v. Wallace*, 257 U.S. 478, 482, 42 S.Ct. 164, 66 L.Ed. 325 (1922) ("[T]he jurisdiction of that [district] court, and ours in reviewing its action, extends to every question involved, whether of federal or state law...."); *Greene v. Louisville & Interurban R.R. Co.*, 244 U.S. 499, 508, 37 S.Ct. 673, 61 L.Ed. 1280 (1917) ("[T]he jurisdiction of that [district] court extended, and ours on appeal extends, to the determination of all questions involved in the case, including questions of state law, irrespective of the disposition that may be made of the federal question, or whether it be found necessary to decide it at all."). That concept, of course, was extended to create pendent or supplemental jurisdiction over claims as well as issues. *See* 17A James Wm. Moore et al., *Moore's Federal Practice* § 120.11[2][c][iii][D] (3d ed.1997); *see also* 28 U.S.C. § 1367(a) (1994) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

First, the Court of Appeals for Veterans Claims relied on 38 C.F.R. § 3.301(c)(2) (the validity of which is challenged) in reaching its decision. *Forshey v. West*, 12 Vet.App. 71 at 74 (Vet.App. 1998). Second, the Court of Appeals for Veterans Claims addressed the "negative evidence" issue explicitly when it concluded that "the Board acted properly in considering" "so-called 'negative evidence' [which] tends to disprove the existence of an intervening cause, which is relevant to a determination of proximate cause." *Id.* at 74. Finally, the Court of Appeals for Veterans Claims elaborated the meaning of section 5107(b) concerning the appropriate burden of proof by citing its earlier decision in *Gilbert v. Derwinski*, 1 Vet.App. 49, 53–54 (1990), which contained an interpretation of the statute, and by noting that the Board had "twice … recognized that '… the preponderance of the evidence must be against the claim for benefits to be denied,'" and that "[a]ccordingly, the Board did not fail to consider the benefit of the doubt rule in the appellant's case." *Forshey*, at 76 (citations omitted). Therefore, we have jurisdiction over each of the three issues that appellant raises on appeal.

### H

Before we leave the question of jurisdiction, it is appropriate for us to note that jurisdictional issues under section 7292 have proved difficult and have arisen frequently. Despite our clarification of those provisions today, this will continue. In enacting section 7292 in 1988 Congress, responding to the concerns of the judiciary, declined to vest us with case jurisdiction, and decided to confine our jurisdiction to the consideration of particular issues in order to avoid burdening our court with a myriad of less important cases. In practice this has proved to have been as unsatisfactory as the "issue" jurisdiction conferred in other areas.

*Tex. Am. Oil Corp. v. United States Dep't of Energy*, 44 F.3d 1557, 1563–64 (Fed. Cir.1995) (en banc). Determination of questions of jurisdiction has diverted the attention of the court and burdened the parties with unnecessary litigation. In the future, Congress may wish to consider amending section 7292 to confer "case" jurisdiction (except for a continued bar on the review of fact issues).

## II *Prudential Considerations*

Our conclusion that we have jurisdiction over the three issues, however, does not end the matter. There are still prudential considerations articulated by the Supreme Court that confine the exercise of our authority.

The leading authority in this area is the Supreme Court's decision in *Hormel v. Helvering*, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). In *Hormel*, the Court, after deciding that the courts of appeals generally have power to decide issues that were not directly raised below, addressed the question whether they should do so. The Court stated the general rule:

Ordinarily an appellate court does not give consideration to issues not raised below.... This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.... [However,] [t]here may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither

pressed nor passed upon by the court or administrative agency below.

*Id.* at 556–57, 61 S.Ct. 719. This court has applied *Hormel* repeatedly to appeals from courts other than the Court of Appeals for Veterans Claims, and has concluded with respect to these other aspects of our jurisdiction that "[w]ith a few notable exceptions, such as some jurisdictional matters, appellate courts do not consider a party's new theories, lodged first on appeal." *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1426, 44 USPQ2d 1103, 1108 (Fed.Cir.1997).[15]

### A

■ Appellant and the supporting amici suggest, however, that the Supreme Court's decision in *Sims v. Apfel,* 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), should entirely excuse the failure of litigants before the Court of Appeals for Veterans Claims to raise issues below because of the special nature of the system for adjudicating veterans' claims. In *Sims,* the Supreme Court considered whether an issue-exhaustion requirement was applicable to the Social Security context. *Id.* at 106, 120 S.Ct. 2080. Sims had applied for Social Security benefits. *Id.* at 105, 120 S.Ct. 2080. After both a state agency and a Social Security administrative law judge ("ALJ") denied her claim, she requested that the Social Security Appeals Council review her claim. After the Council denied review, she sought review in a district court. *Id.* In the district court, Sims urged that "(1) the ALJ had made selec-

tive use of the record; (2) the questions the ALJ had posed to a vocational expert to determine petitioner's ability to work were defective because they omitted several of petitioner's ailments; and (3) in light of certain peculiarities in the medical evidence, the ALJ should have ordered a consultative examination." *Id.* at 105–106, 120 S.Ct. 2080. The district court rejected all of these arguments. The Fifth Circuit affirmed on the merits of the first argument, while concluding that it lacked jurisdiction with respect to the second and third arguments because they were not previously raised in the request for review by the Appeals Council. *Id.* at 106, 120 S.Ct. 2080. The Supreme Court addressed whether Sims had waived any issues not raised in the request to the Council. After explaining the general prudential rule of *Hormel,* the Court concluded that "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Id.* at 109, 120 S.Ct. 2080. The inquisitorial rather than adversarial nature of Social Security proceedings made an issue-exhaustion requirement inappropriate. *Id.* at 110, 120 S.Ct. 2080. Therefore the Court concluded that Sims had not waived issues not raised before the administrative agency. *Id.* at 112, 120 S.Ct. 2080.

In this case, the appellant and the amici urge that the benevolent non-adversarial veterans system weighs in favor of applying *Sims* to our review of the Court of

15. *See also Viskase Corp. v. Am. Nat'l Can Co.,* 261 F.3d 1316, 1326, 59 USPQ2d 1823, 1830 (Fed.Cir.2001) ("Although courts have occasionally permitted ... review [of issues not properly raised in proceedings below], it raises questions of fairness and surprise on appeal."); *Young v. AGB Corp.,* 152 F.3d 1377, 1381, 47 USPQ2d 1752, 1755 (Fed.Cir.1998) (citing *Hormel* for the proposition that appel-

late courts generally only consider issues raised below in order to allow parties to offer all relevant evidence and to prevent unfair surprise on appeal); *Johns Hopkins Univ. v. Cellpro, Inc.,* 152 F.3d 1342, 1362, 47 USPQ2d 1705, 1720 (Fed.Cir.1998) (same); *Great N. Corp. v. Henry Molded Prods., Inc.,* 94 F.3d 1569, 1573, 39 USPQ2d 1997, 2000 (Fed.Cir.1996) (same).

Appeals for Veterans Claims. We disagree. As we noted in *Bailey v. West*, 160 F.3d 1360, 1365 (Fed.Cir.1998), under the 1988 legislation "the system has changed from 'a nonadversarial, *ex parte*, paternalistic system for adjudicating veterans' claims,' to one in which veterans like Bailey must satisfy formal legal requirements, often without the benefit of legal counsel, before they are entitled to administrative and judicial review." The veterans' benefits system remains a non-adversarial system when cases are pending before the Veterans' Administration. However, the Court of Appeals for Veterans Claims' proceedings are not non-adversarial. Even if, as appellant claims, 50% of the cases in the Court of Appeals for Veterans Claims proceed without counsel, the Court of Appeals for Veterans Claims is a court and depends upon the adversarial parties to identify the issues for review. There was no suggestion in *Sims* that issues not raised in the district court in Social Security review proceedings could normally be raised in a court of appeals. Accordingly, *Hormel* rather than *Sims* provides the framework for our analysis of the prudential considerations. We proceed to address those considerations.

## B

*Hormel* and subsequent cases, in emphasizing that courts of appeals generally should not consider issues not decided below, have also emphasized that the question "is one left primarily to the discretion of the courts of appeals...." *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Our discretion in this respect is informed by more than a decade of experience in reviewing decisions of the Court of Appeals for Veterans Claims. We have found in those cases that counsel has attempted to raise legal issues neither decided nor raised below. Indeed, it is perhaps not unfair to suggest that the raising of such issues occurs with some frequency.[16]

In light of that experience, we conclude that, in general, we should not recognize exceptions to the general rule, and, apart from issues of jurisdiction,[17] the classes of cases in which we should consider issues not raised below under section 7292 should be carefully defined.

First, there are cases in which a new statute altering substance or procedure has been enacted after consideration of the case by the lower court. When new legislation is passed while an appeal is pending, courts have an obligation to apply the new law if Congress intended retroactive application even though the issue was not decided or raised below. *See Land-*

16. In addition to *Smith* and *Belcher*, see, e.g., *Westberry v. Principi*, 255 F.3d 1377, 1381 n. 2 (Fed.Cir.2001) (refusing to address for the first time on appeal a veterans procedure manual, which had not been made an issue before the Court of Appeals for Veterans Claims); *Boggs v. West*, 188 F.3d 1335, 1337–38 (Fed.Cir.1999) (declining to review a question of statutory interpretation, which was neither explicitly nor implicitly raised below); *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1577, 17 USPQ2d 1914, 1916–17 (Fed.Cir. 1991) (failing to oppose the motion to dismiss, appellant forfeits his right to contest the dismissal on appeal).

17. *See, e.g., Schlesinger v. Councilman*, 420 U.S. 738, 743, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) ("[S]ince the question of standing goes to this court's jurisdiction, we must decide the issue even though the court below passed over it without comment.") (citations omitted); *Flast v. Cohen*, 392 U.S. 83, 88 n. 2, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) ("Because the question now presented goes to our jurisdiction on direct appeal, the lateness of the claim is irrelevant to our consideration of it.").

*graf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Bradley v. Sch. Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) ("[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.").[18]

■ Second, decision of an issue not decided or raised below is permitted when there is a change in the jurisprudence of the reviewing court or the Supreme Court after consideration of the case by the lower court. In other words, an exception exists in "those [cases] in which there have been judicial interpretations of existing law after decision below and pending appeal—interpretations which if applied might have materially altered the result." *Hormel,* 312 U.S. at 558–59, 61 S.Ct. 719. That was the case in *Hormel* where the Supreme Court considered the new precedent interpreting a relevant tax provision. The District of Columbia Circuit has suc-

cinctly explained the supervening decision doctrine, stating that appellate courts will consider an issue not raised at trial "where a supervening decision has changed the law in appellant's favor and the law was so well-settled at the time of trial that any attempt to challenge it would have appeared pointless." *United States v. Washington,* 12 F.3d 1128, 1139 (D.C.Cir.1994).[19]

■ Third, appellate courts may apply the correct law even if the parties did not argue it below and the court below did not decide it, but only if an issue is properly before the court. The Supreme Court in *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), squarely addressed this exception. The question presented in *Kamen* was whether a representative shareholder in a derivative action founded on the Investment Company Act of 1940, 54 Stat. 789, 15 U.S.C. § 80a–1(a), *et seq.,* was required to make a demand on the board of directors to bring suit even when such a demand would be futile. *Id.* at 92,

---

18. *See also Nilson Van & Storage Co. v. Marsh,* 755 F.2d 362, 365 (4th Cir.1985) ("Usually, when there is a change in the law while a case is pending, a court applies the law in effect at the time of the decision and not antecedent law, unless so doing would result in manifest injustice or there is a statutory direction or legislative history to the contrary."); *United States v. Fitzgerald,* 545 F.2d 578, 581 (7th Cir.1976) ("It is well established that when a lower court relies on a legal principle which is changed by a treaty, statute, or decision prior to direct review, an appellate court must apply the current law rather than the law as it existed at the time the lower court acted.").

19. *See also Cuoco v. United States,* 208 F.3d 27, 30 (2d Cir.2000) (noting that the court must consider an intervening Supreme Court decision if relevant to the appeal); *Holland v. Big River Minerals Corp.,* 181 F.3d 597, 605–606 (4th Cir.1999) ("The intervening law exception to the general rule that the failure to raise an issue timely in the district court

waives review of that issue on appeal applies when 'there was strong precedent' prior to the change, such that the failure to raise the issue was not unreasonable and the opposing party was not prejudiced by the failure to raise the issue sooner.") (citations omitted); *United States v. Lewis,* 40 F.3d 1325, 1343 n. 6 (1st Cir.1994) (applying a case that the court recently decided to the present case pending on appeal); *United States v. Carpenter,* 961 F.2d 824, 826 (9th Cir.1992) (applying a new Supreme Court decision retroactively to the case pending on appeal); *United States v. Novey,* 922 F.2d 624, 629 (10th Cir. 1991) ("An exception to the rule precluding review exists where an intervening Supreme Court decision changes the law while an appeal is pending."); *United States v. Berkery,* 889 F.2d 1281, 1282 (3d Cir.1989) (same); *United States v. Fitzgerald,* 545 F.2d at 582 (When the decisional law has changed, "an appellate court must apply the current law rather than the law as it existed at the time the lower court acted.").

111 S.Ct. 1711. On appeal both parties agreed that the issue should be decided under federal common law. The Seventh Circuit held that such a demand was required under federal common law, and that, because the shareholder representative did not raise the issue of whether state law should govern, the issue of the applicability of state law had been waived. *Id.* at 94–95, 111 S.Ct. 1711. The Supreme Court reversed, holding that "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Id.* at 99, 111 S.Ct. 1711; *accord United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (" 'The judicial Power' extends to cases 'arising under . . . the Laws of the United States,' Art. III, § 2, cl. 1, and a court properly asked to construe a law has the constitutional power to determine whether the law exists.") (citation omitted).[20] Similarly, we may decide to apply the correct law even if the parties do not argue it, if an issue is properly before this court. For example, in this case if the appellant had argued before the Court of Appeals for Veterans Claims that the preponderance of the evidence standard was incorrect and had urged instead a beyond a reasonable doubt standard under the statute, we would have authority on appeal to hold that the statute required application of a clear and convincing evidence standard (if we were to conclude that this was the correct standard). In this case, however, before the Court of Appeals for Veterans Claims the appellant raised no issue below concerning the correct standard of review, and this exception therefore would not apply.

■ Fourth, in situations where a party appeared pro se before the lower court, a court of appeals may appropriately be less stringent in requiring that the issue have been raised explicitly below. In other words, a court of appeals may require less precision in the presentation of the issue to the lower court than it demands of a litigant represented by counsel. This less demanding standard has been repeatedly recognized by the Supreme Court and the courts of appeals. In *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), the Supreme Court concluded that the pleadings of pro se litigants should be held to a lesser standard than those drafted by lawyers when determining whether the complaint should be dismissed for failure to state a claim because "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims." *Id.* at 9, 15, 101 S.Ct. 173. *See also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding a pro se complaint to "less stringent standards than formal pleadings

---

**20.** *See also United States v. Dickerson*, 166 F.3d 667, 672 (4th Cir.1999) ("[T]he Department of Justice cannot prevent us from deciding this case under the governing law simply by refusing to argue it.") (reversed on other grounds); *Williams–Guice v. Bd. of Educ. of City of Chicago*, 45 F.3d 161, 164 (7th Cir. 1995) ("[L]itigants' failure to address the legal question from the right perspective does not render us powerless to work the problem out properly. A court of appeals may and often should do so unbidden rather than apply an incorrect rule of law to the parties' circumstances."); *Empire Life Ins. Co. of Am. v. Valdak Corp.*, 468 F.2d 330, 334 (5th Cir. 1972) ("Appellate review does not consist of supine submission to erroneous legal concepts even though none of the parties declaimed the applicable law below. Our duty is to enunciate the law on the record facts. Neither the parties nor the trial judge, by agreement or passivity, can force us to abdicate our appellate responsibility.") (citations omitted).

drafted by lawyers" when determining whether to dismiss the complaint for failure to state a claim).[21]

■ We thus conclude that our consideration of issues not decided by or raised before the Court of Appeals for Veterans Claims must be carefully restricted. This does not, of course, mean that future panels must in each case consider issues not decided or raised below if the case falls within the scope of one of the exceptions. We hold only that in future cases, we may consider such issues where it is appropriate to do so under all the circumstances. A variety of considerations may counsel against consideration of an issue not decided or raised below in a particular case even though the question falls within one of those exceptions. *See Kamen,* 500 U.S. at 100 n. 5, 111 S.Ct. 1711; *Singleton,* 428 U.S. at 121, 96 S.Ct. 2868. For example, the fact that the appellant specifically urged the legal rule that he now challenges counsels against consideration of the issue. *See Hormel,* 312 U.S. at 557, 61 S.Ct. 719. Moreover, in any particular case, we may either decide the issue on appeal or remand for the Court of Appeals for Veterans Claims to consider the issue. *See Hormel,* 312 U.S. at 558, 61 S.Ct. 719.

We turn now to consider whether prudential considerations suggest that we should decline to address any of the three issues in this case.

■ Because the negative evidence issue was raised and decided below, prudential considerations do not suggest that we should fail to address it. We conclude that the negative evidence issue is without merit. As the Court of Appeals for Veterans Claims correctly concluded, this argument is without merit because evidence is defined as "[a]ll the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved." *Black's Law Dictionary* 555 (6th ed.1990); *see also Black's Law Dictionary* 498 (5th ed.1979). Since the definition of evidence encompasses "negative evidence," which tends to disprove the existence of an alleged fact, this "negative evidence" was relevant to the proximate cause determination under the applicable statutes and regulations. Accordingly, we conclude that the decision below should not be reversed on the basis of appellant's "negative evidence" argument.

■ However, the validity and burden of proof issues were not raised below. We conclude that these issues should not be addressed because none of the exceptions applies here. There is no new statute that governs these proceedings. While we have articulated new law for jurisdictional and prudential requirements in this opinion, that new law does not relate to the subject matter of the issues presented. The exception authorizing us to apply the

---

**21.** The courts of appeals have also applied less stringent standards. *See, e.g., Greer v. Bd. of Educ.,* 267 F.3d 723, 727 (7th Cir.2001) ("[W]e liberally construe the pleadings of individuals who proceed *pro se* " on review of a grant of summary judgment.); *Herron v. Harrison,* 203 F.3d 410, 414 (6th Cir.2000) ("A pro se plaintiff's complaint is held to an especially liberal standard, and should only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "); *Smith*

*v. Hundley,* 190 F.3d 852, 855 n. 7 (8th Cir. 1999) ("We find that even if some ambiguity can be found in the complaint, its request for 'such other and further relief as the Court may deem just and proper' coupled with the fact that it is a pro se complaint permits us, under a liberal construction of the pleadings, to preliminarily consider the issue."); *Nunnally v. MacCausland,* 996 F.2d 1, 6 n. 8 (1st Cir.1993) (noting that on review of a summary judgment, "[p]ro se filings are held to a less stringent procedural standard than others").

correct law is not satisfied because no issue was raised below concerning the correct standard of review. Finally, this is not a case that was litigated pro se below. Under these circumstances, we decline to consider the validity and burden of proof issues.

### III Responses to Questions

As previously mentioned we asked the parties to address four questions for purposes of the en banc rehearing. We set forth below the questions and our answers to these questions.

1. Is the rationale and holding in this case consistent with the rationale and holdings in *Smith* and *Belcher*?

 Yes, except to the extent that our decision modifies *Smith* and *Belcher*. We hold that we have jurisdiction over: (1) issues concerning the validity of statutes or regulations on which the decision of the Court of Appeals for Veterans Claims depended; (2) issues of interpretation if the Court of Appeals for Veterans Claims elaborated the meaning of a statute or regulation and the decision depended on that interpretation; (3) issues of validity or interpretation raised before the Court of Appeals for Veterans Claims but not decided, if the decision would have been altered by adopting the position that was urged; and (4) other "relevant" questions of law. However, even when jurisdiction exists, our authority to consider issues not raised before the Court of Appeals for Veterans Claims is limited.

2. If the rationale and holding in this case is not consistent with the rationale and holdings in *Smith* and *Belcher*, should *Smith* and *Belcher* be overruled?

 This question is inapplicable.

3. If *Smith* and *Belcher* are not overruled, are the rationale and holdings in those cases consistent with the rationale and holding in *In re Bailey*?

 We decline to address this question. See below.

4. If the rationale and holdings in *Smith* and *Belcher* are not consistent with the rationale and holding in *In re Bailey*, which of *Smith* and *Belcher* or *In re Bailey* should be overruled?

 In light of our disposition of this case, we need not address whether section 7292(d)(2) gives us jurisdiction over free-standing constitutional issues that do not involve a challenge to the interpretation or validity of a statute or regulation, as we held in *In re Bailey*, 182 F.3d 860 (Fed.Cir.1999).

### CONCLUSION

For the foregoing reasons, the judgment of the Court of Appeals for Veterans Claims is affirmed.

*AFFIRMED.*

### COSTS

No Costs.

MAYER, Chief Judge, with whom Circuit Judge NEWMAN joins, dissenting.

I disagree with the court's imposition of the traditional rule of issue preclusion embodied in *Hormel v. Helvering*, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941), upon the veterans' system. The *Hormel* rule applies to appeals from adversarial trial courts or administrative hearings. It protects against surprise issues on appeal for which parties have not had the opportunity to present relevant evidence below. *Id.* at 556, 61 S.Ct. 719. Application of such a rule in the veterans' system is

inappropriate because the facts are developed in non-adversarial circumstances, and the system is uniquely paternalistic. Therefore, I respectfully dissent.

## I

*Sims v. Apfel,* 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), is the appropriate model. It held that a judicially-imposed requirement of issue exhaustion is inappropriate in the social security context because the parties have a nonadversarial relationship:

> It is true that we have imposed an issue-exhaustion requirement even in the absence of a statute or regulation. But the reason we have done so does not apply here.... The desirability of a court imposing a requirement of issue exhaustion depends on the *degree* to which the analogy to normal adversarial litigation applies in a particular administrative proceeding. Where the parties are expected to develop the issues in an adversarial administrative proceeding, it seems to us that the rationale for requiring issue exhaustion is at its greatest. Where, by contrast, an administrative proceeding is not adversarial, we think the reasons for a court to require issue exhaustion are much weaker.

*Id.* at 108–10, 120 S.Ct. 2080 (internal quotations and citations omitted) (emphasis added). Because social security proceedings are inquisitorial, far from adversarial, in which the function of the administrative judge is to investigate facts and develop arguments both for and against granting benefits, *Sims* concluded that "the *Hormel* analogy to judicial proceedings is at its weakest in this area. The adversarial development of issues by the parties—the 'com[ing] to issue'—on which that analogy depends simply does not exist." *Id.* at 112, 120 S.Ct. 2080 (citation omitted).

The *Sims* rationale applies with equal, if not greater force in this arena. Indeed, "the degree to which the analogy to normal adversarial litigation applies," *id.* at 109, 120 S.Ct. 2080, is even slighter than in *Sims.* The system for awarding veterans' benefits is "imbued with special beneficence" from a sovereign grateful to a "special class of citizens, those who risked harm to serve and defend their country." *Bailey v. West,* 160 F.3d 1360, 1370 (Fed. Cir.1998). It is "supposed to be a nonadversarial, *ex parte,* paternalistic system," that is uniquely pro-claimant. *Collaro v. West,* 136 F.3d 1304, 1309 (Fed.Cir.1998). Viewed in its entirety, the veterans' system is constructed as the antithesis of an adversarial, formalistic dispute resolving apparatus. It is entirely inquisitorial in the regional offices and at the Board of Veterans' Appeals where facts are developed and reviewed. The purpose is to ensure that the veteran receives whatever benefits he is entitled to, not to litigate as though it were a tort case. If issue preclusion is inappropriate in the inquisitorial social security forum, it should not be imposed upon the veterans' system, either. The mandate of both is to provide what has been earned. But as we observed in *Bailey,* 160 F.3d at 1365, the salutary system has changed since the Veterans' Judicial Review Act to the opposite of what Congress intended.

It is true that *Sims* involved court review of agency decisions, and we are reviewing a court judgment. But that is of no moment because the Veterans Court is not a fact finding body like a district court. Review permits no additional evidence, and does not disturb factual findings. The factual foundation of the administrative decision of the board passes through the Veterans Court to us as a matter of law. Therefore, the *Hormel* analogy is again inappropriate because we are authorized to address only issues of law.

## II.

Even if the court's formulation of the *Hormel* framework were appropriate here, I would think the court should be less parsimonious in its discretionary review decisions. I would expect the court to decide the proper standard for rebutting service-connection. This question falls squarely within the third exception to issue preclusion set out by the court: "[W]e may decide to apply the correct law even if the parties do not argue it, if an issue is properly before this court." *Ante*, at 1357 (relying on *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.")).

Forshey claimed that insufficient evidence was used to meet the preponderance of the evidence standard in 38 U.S.C. § 5107(b),[1] the benefit of the doubt rule, to rebut the presumption of service connection set out in 38 U.S.C. § 105(a)[2] and elucidated in 38 C.F.R. § 3.301(c)(2).[3] Her argument is, in essence, and has been since the board level, that insufficient evidence existed to deny her benefits per section 3.301(c)(2). The court has already said the case is properly before us.[4] The court's proposition that this exception does not apply because Forshey did not explicitly urge that a clear and convincing standard be applied, *ante*, at 1357–58, defies logic. This exception grants us the authority to identify what type and how much evidence is needed to rebut service-connection under 38 U.S.C. § 105(a) and 38 C.F.R § 3.301(c)(2), and apply the proper constructions.

We have discretion to consider questions not raised below; we should exercise it. *See Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). This court has already set out a series of cir-

---

**1.** 38 U.S.C. § 5107(b) (1994) provides:

> When, after consideration of all evidence and material of record in a case before the Department with respect to benefits under laws administered by the Secretary, there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. Nothing in this subsection shall be construed as shifting from the claimant to the Secretary the burden specified in subsection (a) of this section.

**2.** 38 U.S.C. § 105(a) (1994) provides in relevant part:

> An injury or disease incurred during active military, naval, or air service will be deemed to have been incurred in line of duty ... unless such injury or disease was a result of the person's own willful misconduct or abuse of alcohol or drugs.

**3.** 38 C.F.R. § 3.301(c)(2) (2001) (language unchanged since 1990) provides in relevant part:

> The simple drinking of alcoholic beverage is not of itself willful misconduct.... If, in the drinking of a beverage to enjoy its intoxicating effects, intoxication results proximately and immediately in disability or death, the disability or death will be considered the result of the person's willful misconduct.

**4.** The court carefully construes the language of our jurisdictional statute, 38 U.S.C. § 7292, and concludes that jurisdiction is proper because the Court of Appeals for Veterans Claims relied on 38 C.F.R. § 3.301(c)(2); explicitly addressed the negative evidence issue raised by 38 U.S.C. § 5107(b); and twice elaborated that denial of Forshey's claims required the burden of proof embodied in section 5107(b), a preponderance of the evidence. *Ante*, at 1352–53. The original panel decision made the same jurisdictional determinations. *See Forshey v. Gober*, 226 F.3d 1299 (Fed.Cir.2000) (vacated).

cumstances in which exceptions to issue preclusion arise. *L.E.A. Dynatech, Inc. v. Allina,* 49 F.3d 1527, 1531 (Fed.Cir.1995). We may choose to consider arguments if the issue is one of pure law; the proper resolution is beyond all doubt; there was no opportunity to raise the objection below; it is a significant question of general impact or public concern; or it is in the interest of substantial justice. *Id.* Even *Hormel* advocates an exception to the strict application of issue preclusion "as justice may require." 312 U.S. at 559, 61 S.Ct. 719. "There may always be ... particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." *Id.* at 557, 61 S.Ct. 719.

The issue in this case is a purely legal one, and requires no additional factual development. It is a significant question of public concern because fundamental due process is implicated. And the standard of review requires clarification so that the parties and factfinders understand the level of evidentiary probity needed to rebut the presumption of service-connection. Review of the standard by which veterans or their dependents may be denied benefits is in the interest of substantial justice. I see no need to constrain our discretion; because Congress created a veteran-friendly system, the court should generously indulge a presumption that the exceptions to issue preclusion apply.

## III.

The standard of proof applied to rebut the section 105 presumption of service-connection was derived from an interpretation of 38 U.S.C. § 5107(b) (then § 3007(b)) in *Gilbert v. Derwinski,* 1 Vet. App. 49 (1990). This statute provides that when the positive and negative evidence concerning an issue material to the determination of a veteran's benefit claim is roughly in equipoise, the benefit of the doubt is to be given to the claimant. *See id.* at 55. The United States Court of Appeals for Veterans Claims likened this to the rule in baseball that "the tie goes to the runner." *Id. Gilbert* determined that in light of section 5107(b), "the preponderance of the evidence must be against the claim for benefits to be denied." *Id.* at 54.

In my view, section 5107(b) sets out not a standard of proof, but a rule for weighing evidence material to a claim. It is operative only after a claimant produces evidence to establish his claim. In contrast, where one relies on a presumption, he does not yet need to offer evidentiary support. Section 5107(b) does not address the rebuttal of a presumption.

A presumption has evidentiary value, but it is not a form of evidence. *Routen v. West,* 142 F.3d 1434, 1439 (Fed.Cir. 1998). Instead, a presumption affords a party "the luxury of *not having to produce specific evidence* to establish the point at issue. When the predicate evidence is established that triggers the presumption, the further evidentiary gap is filled by the presumption. However, when the opposing party puts in proof to the contrary of that provided by the presumption, *and that proof meets the requisite level,* the presumption disappears." *Id.* at 1440 (citations omitted) (emphasis added). When such evidence overcomes the presumption, "[t]he party originally favored by the presumption is now put to his factually-supported proof. This is because the presumption does not shift the burden of persuasion, and the party on whom that burden falls must ultimately prove the point at issue...." *Id.* Once a fact is no longer presumed, a party must

rely on actual evidence to establish its existence.

Negative evidence, actual evidence which weighs against a party, must not be equated with the absence of substantive evidence. Rebutting a presumption requires affirmative proof. *See Amin v. Merit Sys. Prot. Bd.,* 951 F.2d 1247, 1254 (Fed.Cir.1991). Forshey correctly argues that the government failed to offer affirmative proof that the veteran's death was proximately and immediately caused by his willful misconduct. It offered that the veteran had an elevated blood alcohol level, the weather was clear, the road surface was dry, it was daylight, and there was no sign of mechanical failure of the motorcycle. But this says nothing about causation; it reflects an absence of causal evidence. Forshey was denied benefits based on a negative inference from the lack of an apparent cause. The absence of actual evidence is not substantive "negative evidence."

Once all the actual positive and negative evidence is presented, proof is assessed in the manner required by section 5107(b), with doubt resolved in the veteran's favor. The determination, then, of whether a presumption is rebutted does not involve a weighing of the evidence for and against the material issues in a claim in accordance with section 5107(b). Instead, the presumption is rebutted when the contrary evidence "meets the requisite level" to cast sufficient doubt on its viability. *Routen,* 142 F.3d at 1440. Other statutes related to veterans' benefits have explicitly set forth this requisite level, *see, e.g.,* 38 U.S.C. § 1154(b) (1994) ("Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary."), but section 105 is silent.

Even if the Secretary had promulgated a regulation setting out an evidentiary standard, we would not be bound to defer to a preponderance standard. *See Gardner v. Brown,* 5 F.3d 1456, 1463 (Fed.Cir. 1993) (refusing to defer to a long-standing Veterans Administration regulation on four separate bases), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). In this instance, however, section 3.301(c)(2) of the regulation does not provide an evidentiary standard by which the section 105(a) presumption that an injury occurs during active service may be rebutted. Instead, the Secretary argues that the preponderance of the evidence standard applies based on section 5107(b). To the contrary, I believe the veterans' benefits system demands a more exacting standard.

## IV.

A standard of proof serves to "instruct the fact-finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions." *In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "[T]he minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Santosky v. Kramer,* 455 U.S. 745, 755, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Over time, three general standards have emerged: proof by a preponderance of the evidence, proof by clear and convincing evidence, and proof beyond a reasonable doubt.

The Supreme Court's discussion in *Addington v. Texas,* 441 U.S. 418, 423–25, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), provides a helpful summary of the standards of proof and their rationales. In civil suits, the preponderance of the evidence standard has been employed, allocating the risk of error almost evenly between parties in a situation with which society is only

minimally concerned. At the other end is the reasonable doubt standard, typically reserved for criminal cases. It provides the toughest standard for rebuttal of the presumption that an individual is innocent until proven guilty, reflecting the grave concern for errors that could send an innocent individual to prison. As the Court noted, "[i]n the administration of criminal justice, our society imposes almost the entire risk of error upon itself." *Id.* at 423–24, 99 S.Ct. 1804.

The clear and convincing evidence standard has been used in civil suits where "particularly important individual interests" are at stake, under circumstances where the interests are substantially more important than the "mere loss of money," or where there are accusations of "quasi-criminal wrongdoing." *Id.* at 424, 99 S.Ct. 1804. Under these conditions, societal interest dictates that one side should be afforded protection from the risk of error that exceeds the limits of a preponderance standard but falls short of the exacting standard in criminal cases. *See, e.g., Markland v. Office of Personnel Management,* 140 F.3d 1031, 1035 (Fed.Cir.1998) (agency establishing rationale for reduction in force acquires presumption of good faith and lawfulness rebuttable by clear and convincing evidence); *Pennwalt Corp. v. Akzona Inc.,* 740 F.2d 1573, 1578–79 (Fed.Cir.1984) (party challenging presumptive validity of a patent must present clear and convincing evidence of invalidity).

In devising the veterans' benefits system, Congress has provided many statutory advantages to lighten the burden of proving entitlement to benefits: several presumptions (including the one before us), the benefit of the doubt rule, and the duty of the Secretary to assist a claimant in developing the facts of his claim, *see, e.g.,* Veterans Claims Assistance Act of 2000, Pub.L. No. 106–475, 114 Stat. 2096 (codified as amended in scattered sections of 38 U.S.C.A.). Furthermore, the Supreme Court's mandate that any interpretive doubt about the meaning of language in a statute be resolved in the veteran's favor derives from an appreciation of the benevolent intent behind the veterans' system. *See Brown v. Gardner,* 513 U.S. 115, 117–18, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); *Jensen v. Brown,* 19 F.3d 1413, 1417 (Fed.Cir.1994).

It is apparent that a preponderance of the evidence standard does not fairly distribute the risk between a veteran and the government. Congress intends that "if *any* error occurs, it will occur in the veteran's favor." *Jensen,* 19 F.3d at 1417 (emphasis added). The government is more capable of shouldering the burden of error if an undeserving claimant prevails, than would be a deserving veteran or his survivor wrongly denied benefits. Therefore, no less than a showing of clear and convincing evidence to the contrary is sufficient to rebut the presumption of service-connection afforded a veteran under 38 U.S.C. § 105.

This conclusion fits comfortably within the statutory scheme of the veterans' benefits system. The clear and convincing standard is explicitly present in other presumptive statutes. *See* 38 U.S.C. § 1154(b) (1994) (service-connection for disease or injury suffered by combat veterans must be rebutted by clear and convincing evidence); *id.* § 1111 (requiring clear and unmistakable evidence to rebut a presumption of sound condition); *see also* 38 C.F.R. § 3.306(b) (2001) (clear and unmistakable evidence necessary to rebut a presumption relating to service aggravation of preexisting conditions). There is no reason in law or logic for a different rule here.

This case is another illustration of the old adage: "Be careful what you wish for,

you just might get it." Veterans sought for over a hundred years to secure judicial review of the Secretary's decisions. Now that they have it, they are finding that judicialization is leading to prolonged delays and a growing complexity of rules that rival the tax code in opaqueness. Congress should revisit its legislative handiwork and restore the veterans' system to its original purpose set out by President Lincoln: "[T]o care for him who shall have borne the battle, and for his widow, and his orphan." Second Inaugural Address of Abraham Lincoln (Saturday, March 4, 1865), *in Inaugural Addresses of the Presidents of the United States from George Washington 1789 to George Bush 1989*, at 143 (U.S. Gov't Printing Office, Bicentennial ed.1989).