**Peter MORRIS, Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.**

No. 03–7019.

United States Court of Appeals, Federal Circuit.

DECIDED: April 11, 2003.

Before LOURIE, BRYSON, and GAJARSA, Circuit Judges.

PER CURIAM.

Peter Morris ("Appellant") appeals from the decision of the United States Court of

Appeals for Veterans Claims affirming the May 23, 2001 decision of the Board of Veterans' Appeals ("BVA") that Mr. Morris did not have a valid claim for accrued benefits. *Morris v. Principi*, No. 01–1668, 2002 WL 1733873 (Vet.App. July 18, 2002). Because we lack jurisdiction over this appeal, we *dismiss.*

## BACKGROUND

Appellant's father, Stuyvesant Fish Morris III, was a veteran who served on active duty from August 11, 1941 to December 9, 1946, and died on March 21, 1948. *In re Morris*, No. 00–18360, slip op. at 3 (BVA May 23, 2001). He was survived by his wife, Mrs. Madeleine W. Morris, and by three sons, two of whom, including Appellant, were minors at the time of his death.[1]

In April 1948, William S. Pettit, an attorney representing the veteran's estate, sent a letter to the Treasurer of the United States, requesting information regarding a life insurance policy held by the veteran. Pettit identified the policy by number, and requested that the Treasurer advise him "to whom the policy is payable and the amount thereof" and send him "forms for proof of death and any other blanks necessary to be filled out by the widow or his children." The letter was forwarded to the Veterans Administration ("VA"), which then replied directly to Mrs. Morris, notifying her that she and the three sons were the designated beneficiaries of the veteran's National Service Life Insurance ("NSLI").[2] The letter instructed Mrs. Morris to send information regarding the place and date of the veteran's death and the names and addresses of the minor children. *Id.* In a hand-written letter dated May 21, 1948, Mrs. Morris provided the requested information, specifically, her husband's name; the time, place, and cause of his death; and the names, ages, and addresses of their three sons. *Id.* at 4.

The VA thereafter sent two letters to Mrs. Morris, both dated June 1, 1948. In one of those letters, the VA provided further instructions for settling the NSLI claim. The letter was accompanied by two forms, which Mrs. Morris apparently completed and returned to the VA. The second letter stated that "[t]he Veterans Administration has learned with regret of the death of the above-named veteran and is taking this opportunity to offer assistance in applying for benefits to which you may be entitled."[3] The letter further explained that:

> Under the law now in effect death compensation or pension may be payable to the widow and children of a veteran

---

1. Appellant was born in January 1932, and was therefore sixteen years old at the time of his father's death. *In re Morris*, slip op. at 3. His brother Livingston Van Buren Morris was seventeen years old, and his brother Stuyvesant Fish Morris IV was twenty-two.

2. A courtesy copy of that letter was also sent to Mr. Pettit. In addition, the VA sent a separate letter to Pettit, with a copy to Mrs. Morris, stating that the law would not permit recognition of an attorney unless the attorney had been admitted to practice before the VA, had filed a power of attorney in the case, and had submitted a signed statement that no fee would be charged or paid for the services

rendered. *In re Morris*, slip op. at 3. Although the letter gave some guidance as to how Pettit could apply for admission, the record does not reflect that Pettit had any subsequent involvement in the present case.

3. The last three letters of the word "Administration" and the phrase "has learned ... veteran" in that sentence, as well as an apparently incorrect reference number and date at the top of the letter, were overstruck with a series of "X"s on the record copy of the letter, but the original words are still legible beneath. Appellant regards the overstriking as "important[ ]" in his appeal brief.

whose death was due to a disease or injury incurred in or aggravated by his active military or naval service. Death pension may also be payable under certain conditions, regardless of the cause of death, to the widow and children of a veteran who rendered service during either the Indian Wars, the Civil War, the War with Spain (including the Philippine Insurrection and the Boxer Rebellion), World War I, or World War II. Pension is not payable in the case of a veteran of World War I or World War II whose death was not due to service if the annual income of a widow or a child exceeds $1,000, or the annual income of a widow with a child or children exceeds $2,500. The filing of a claim does not necessarily mean that the benefits applied for will be allowed, but if you desire to submit an application the enclosed form should be completed in accordance with the instructions printed thereon and returned to this office. You may write to this office or contact any Veterans Administration office for assistance in the preparation of your claim.

As noted, an application form was enclosed with the letter. Despite Mrs. Morris's being "the widow ... of a veteran who rendered service during ... World War II" and whose death was due to service, the record shows no indication that she responded to the letter or sought any further information or assistance for the next approximately eleven years.

In 1959, Appellant, then 27 years old and working in the insurance industry, apparently realized that he, his brother, and his mother might have been eligible for death compensation or a pension as a result of his father's death. With Appellant acting as her representative, Mrs. Morris then submitted an application for dependency and indemnity compensation ("DIC"). The application was received by the VA on May 5, 1959, but was initially denied because the VA found no evidence that the veteran's death was service-related. Mrs. Morris successfully appealed that initial decision, and she was notified in a letter dated January 22, 1960 that her DIC award was approved and made effective retroactive to the May 5, 1959 filing date of the application. *Id.* at 5. A copy of the January 22, 1960 letter was also furnished to Appellant as his mother's representative. The letter stated, among other things, that there was a one-year time limit for appealing the award, but neither Appellant nor his mother appealed the effective date or any other aspect of the award. Mrs. Morris received DIC payments until her death in November 1977. *Id.* at 5–6.

In December 1998, Appellant wrote to U.S. Senator Ben Nighthorse Campbell, questioning the VA's 1960 decision to make his mother's DIC award retroactive only to the date she filed for the benefit, rather than to the date of his father's death. He concluded the letter by asking if anything could be done to recover the difference between the payments his mother had actually received and those that she would have received if the award had been made effective from the date of her husband's death.

Sen. Campbell made an inquiry at the VA on Appellant's behalf in February 1999. The VA responded shortly thereafter, explaining that benefits are paid based upon the date of the application. The VA also noted that Appellant was not entitled to retroactive benefits based on his status as a child of the veteran, because he no longer met the criteria for establishing that he is a "dependent child of the veteran" as that term is used in the relevant regulation, 38 C.F.R. § 3.57, and that the regulations in any event also require that the VA receive any claim within one year

from the date of death, 38 C.F.R. § 3.109. The VA concluded that there were no accrued benefits payable.

Appellant corresponded several more times with the VA over the following year, asserting, among other things, that: (1) widow's survivorship benefits should have been paid to his mother from the date of his father's death; and (2) children's survivorship benefits should have been paid to him and his brother from the time of their father's death until their eighteenth birthdays. The VA consistently denied Appellant's claims of entitlement to those benefits, explaining that Mrs. Morris had not submitted an application for benefits until 1959, and that no survivorship benefits had accrued until the VA received that application.[4] Moreover, since Appellant and his brother were both over the age of eighteen by the time the application was filed, they were never personally entitled to any benefits.

In July 2000, at Appellant's request, the VA held a hearing regarding Appellant's claim to "accrued benefits" for the March 1948 to May 1959 period, and it again concluded that the evidence showed that no benefits had accrued. The VA found, in particular, that the effective date of the DIC award was not appealed within one year of the award notice, and that it was not, in any event, in error. The VA also noted that, even if accrued amounts did exist, the claimant would not have been eligible to receive them because his claim was not filed within one year of his mother's death in 1977 and he was in any case already over the age of eighteen.

Appellant then appealed to the BVA. In his appeal, Appellant argued that his mother *had* actually attempted to file a claim for benefits in 1948, but was never given the necessary assistance to complete her claim before 1959. According to Appellant, both Pettit's April 5, 1948 letter requesting information about the veteran's NSLI policy, and Mrs. Morris's May 21, 1948 handwritten letter stating the place and date of the veteran's death and the names, ages, and addresses of their children, in response to the VA's requests in connection with the NSLI claim, should have been regarded as a request for DIC benefits, and the dates of those letters should therefore be regarded as the "effective filing date" for the purpose of 38 C.F.R. § 3.400(c)(2). Since those dates were both within a year of the veteran's death, Appellant argued, the effective date for the award should have been March 1, 1948, *i.e.*, the first day of the month the death occurred. Appellant further argued that he was unaware of the existence of either of those letters prior to February 14, 2000, the date on which he alleges that he received a complete copy of the veteran's file from the VA, and thus could not have filed an appeal any earlier than he did.

The BVA considered those arguments, but found that, based upon the evidence,

---

**4.** In support of that conclusion, the VA cited 38 C.F.R. § 3.400(c)(2), which provides that the effective date of an award of DIC benefits for a service-connected death after separation from service is the "[f]irst day of the month in which the veteran's death occurred if claim is received within 1 year after the date of death; otherwise, date of receipt of claim." *See also* 38 U.S.C. § 5110 (2000) ("(a) Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of ... dependency and indemnity compensation ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor .... (d) The effective date of an award of death compensation or dependency and indemnity compensation for which application is received within one year from the date of death shall be the first day of the month in which the death occurred.").

the VA had not erred in its assignment of May 5, 1959 as the effective date; Mrs. Morris's failure to appeal the VA's decision within a year of the January 22, 1960 award letter rendered the decision final; Mrs. Morris's right to contest the VA decisions concerning her entitlements died with her in 1977; and even if Mrs. Morris had been entitled to accrued benefits at the time of her death for which a child might have had a claim, applications for such benefits must have been filed within one year after the date of death, 38 U.S.C. § 5121(c). *In re Morris*, slip op. at 9. The BVA accordingly held that Appellant's claim, filed more than 21 years after his mother's death and concerning matters that transpired more than 23 years prior to that death, lacks legal merit. *Id.*

On June 23, 2001, Appellant filed a motion for reconsideration by the BVA. The motion was denied on August 14, 2001, and Appellant timely appealed the BVA's decision to the Court of Appeals for Veterans Claims. The court issued an order affirming the BVA's decision on July 18, 2002, holding that Appellant had no valid claim at law for VA accrued benefits. *Morris v. Principi*, slip op. at 3. The court found that appellant's claim was untimely because it was not filed within one year of his mother's death. *Id.* at 2. The court further observed that even if Appellant *had* filed within that year *and* had also been "able to show that his mother was entitled to benefits 'due and unpaid,' he would still

be ineligible" for benefits because he was not a dependent child at the time of his mother's death. *Id.* Appellant subsequently filed a motion for reconsideration. The court denied the motion on August 30, 2002, and Appellant timely appealed to this court.

## DISCUSSION

■ In *Forshey v. Principi*, 284 F.3d 1335 (Fed.Cir.2002), this court, sitting *en banc*, held that, pursuant to 38 U.S.C. § 7292(a):

[W]e have jurisdiction to review a decision of the Court of Appeals for Veterans Claims if that review invokes: (1) issues concerning the validity of statutes or regulations on which the Court of Appeals for Veterans Claims depended; (2) issues of interpretation if the Court of Appeals for Veterans Claims elaborated the meaning of a statute or regulation and the decision depended on that interpretation; and (3) issues of validity or interpretation raised before the Court of Appeals for Veterans Claims but not decided, if the decision would have been altered by adopting the position that was urged.

*Id.* at 1351.[5] Our jurisdiction is not plenary, however. Congress has expressly limited the scope of our jurisdiction, providing that:

Except to the extent that an appeal under this chapter presents a constitution-

---

**5.** On December 6, 2002, after we decided *Forshey*, the Veterans Benefits Act of 2002, Pub.L. No. 107–330, 116 Stat. 2832, was enacted, which, among other things, amended 38 U.S.C. § 7292(a), effectively expanding this court's jurisdiction to include decisions "on a rule of law" in addition to decisions concerning the validity or interpretation of a statute or regulation. The amended statute reads:

After a decision of the United States Court of Appeals for Veterans Claims is entered in

a case, any party to the case may obtain a review of the decision with respect to the validity of any decision of the Court on a rule or law or of any statute or regulation ... or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision.

38 U.S.C.A. § 7292(a) (West 2003). Since Appellant does not question the validity of any decision on a rule of law, that amendment does not affect our analysis in this case.

al issue, the Court of Appeals [for the Federal Circuit] may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case.

38 U.S.C. § 7292(d)(2) (2000).

In his appeal brief, Appellant explicitly acknowledges that the court's decision did not "involve the validity or interpretation of a statute or regulation." He also acknowledges that the court did not "decide constitutional issues." We agree with both of those statements, and we find as well that the decision did not involve the validity of a decision on a rule of law. Those conclusions decide this appeal, as we do not have jurisdiction to review factual determinations or applications of law to fact.

Appellant makes several arguments in his appeal brief. First, he argues that the court "did not address the very simple issue I have questioned. Namely, our mother's informal claim for benefits filed within one month of our father's death." It is unclear from the way that argument is phrased whether Appellant means that the court did not address whether Mrs. Morris's handwritten letter constituted an informal claim or if he means that the court did not acknowledge that that letter was filed within one month of his father's death. Either way, the argument is a purely factual one, and one that was fully resolved below. In particular, the DVA, at page 7 of its opinion, explained that:

> The provisions of 38 C.F.R. § 3.155 indicate that an informal claim is any communication or action, indicating an intent to apply for one or more benefits, from a claimant or his or her proxy. The informal claim must identify the benefit sought. Thereafter, if a formal claim has not already been filed, VA must forward one to the claimant for execution. If it is received back by VA within one year from the date it was

forwarded by VA, it will be considered filed as of the date of receipt of the informal claim.

*In re Morris,* slip op. at 7.

The record indicates that the DVA had the handwritten May 21, 1948 letter before it during this appeal, and that it made the factual determination that no informal claim was received by the VA prior to May 5, 1959. *Id.* at 8. We have no authority to review that determination, but observe that, even if the May 21, 1948 letter had been considered to have been an informal claim, it appears that the VA fully discharged its duty by forwarding the formal claim form attached to its June 1, 1948 death compensation/pension letter. As the DVA noted, Mrs. Morris did not return the form within a year of that forwarding, *id.,* and therefore there could have been no entitlement to the date of the purported informal claim.

Appellant also argues that "the N.Y. V.A. claims officer Powers did *not* perform his duties as a claims officer to provide our mother the assistance she needed at the time of our father's death." Whether or not the claims officer performed his duties is also a purely factual question that is outside of the scope of our review.

Appellant also requests that the court review the arguments that he previously submitted. Among those arguments are: (1) that his mother may have been confused by receiving two letters with the same (*i.e.,* June 1, 1948) date; (2) that, insofar as the June 1, 1948 death compensation/pension letter included information relating to wars other than World War II and information regarding income-based eligibility limits for widows and children of veterans whose deaths were not service-connected, his mother might have been dissuaded from filing a claim for the benefits to which she was entitled; and (3) that he did not receive a complete copy of his

father's file until 2000, and therefore had no basis upon which to file a claim any earlier. Appellant further notes that "the VA manual states that 'reasonable doubts should be resolved in favor of the veteran (or his family).'" Like Appellant's other arguments, however, all of those listed above involve factual contentions that are beyond our review.

■ Lastly, Appellant argues, "it took the VA **over two full years** to deny my claim, *because I am not a minor under the age of 18! Please know that at the time of my father's death, I was a minor ....and I was entitled to benefits!*" That argument is moot now because, as Appellant admits, he is not a minor and, more importantly, he was not a minor at the time when he first sought the benefits to which he now claims entitlement.

We have considered Appellant's other arguments and find them either unpersuasive or beyond our jurisdiction.

## CONCLUSION

Because Appellant has not raised any constitutional issues or challenged the validity of a decision on a rule of law or the validity or interpretation of a statute or regulation, we do not have jurisdiction to review the order. The appeal is therefore dismissed.