**Carole P. SILBAR, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
**Respondent.**

No. 03–3200.

United States Court of Appeals,
Federal Circuit.

DECIDED: Dec. 12, 2003.

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

PER CURIAM.

Carole P. Silbar ("Silbar") appeals the Merit Systems Protection Board's ("Board") decision sustaining the Office of Personnel Management's ("OPM") finding that she had been overpaid $1500 in annuity benefits. *Silbar v. Office of Pers. Mgmt.*, No. SF–831M–01–0483–I–2 (M.S.P.B. Mar. 1, 2002). We *affirm.*

From July 28, 1975, through September 17, 1998, Silbar periodically worked for the Department of Veterans Affairs ("DVA"). Some of this service was full-time, some was part-time, and the remainder was volunteer service. When Silbar retired, she expected to receive, and did receive, a $1134 monthly annuity. Shortly thereafter, OPM explained to Silbar that the interim payments had resulted in an overpayment to her in the amount of $1500, because OPM was not aware that her civil service annuity was subject to an offset for social security benefits. Silbar challenged this overpayment finding. In a revised reconsideration decision, OPM determined that Silbar's civil service annuity had been

correctly calculated and confirmed that it had made an overpayment of her annuity in the amount of $1500.

Silbar appealed OPM's reconsideration decision to the Board. She contested the amount and existence of the overpayment, arguing that OPM incorrectly calculated her annuity benefit amount. The Administrative Judge ("AJ") upheld OPM's calculation of the annuity and the existence of the overpayment. The full Board denied Silbar's petition for review, and the AJ's Initial Decision became final. Silbar now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

Silbar posits four areas in which the AJ erred, none of which we find persuasive. We begin with Silbar's contention the AJ should have applied 38 U.S.C. § 7426(c), not 38 U.S.C. § 7426(b), so that her part-time service prior to April 7, 1986, would be credited as full-time service in the calculation of her retirement annuity. Subsection (c) was not considered in calculating Silbar's annuity. Nor could it, because the provision was enacted on January 23, 2002, four months after OPM's revised reconsideration decision. Silbar had at least two opportunities to raise the issue of the relevance of subsection (c) to her case: at her hearing on February 23, 2002, and in her Petition for Review of the Initial Decision of the Board. However, she did not. Because Silbar did not raise the issue of the applicability of subsection (c) before the Board, we decline to consider it on appeal. *See Forshey v. Principi*, 284 F.3d 1335, 1358 (Fed.Cir.2002) (*en banc*) (holding that this court generally will not decide issues not raised below).

■ Silbar also contends that the government should be estopped from awarding her a lower annuity value than originally estimated due to her status as a Civil Service Retirement System ("CSRS") Offset employee. First, as the AJ pointed out, the record indicates that Silbar was informed, in at least one annuity estimate, that her annuity would be reduced if she was eligible for social security benefits. As the AJ's analysis shows, Silbar was eligible for social security benefits, and her annuity was therefore reduced. Additionally, we agree with the AJ that Silbar's situation falls squarely within the holding of the Supreme Court in *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), establishing that monies not authorized by statute could not be paid from the Federal Treasury upon the basis of estoppel arising out of alleged misinformation by federal employees.

Silbar asserts that the AJ erred in reviewing OPM's annuity calculation by not considering additional hours she claims to have worked. The only evidence of this additional work is in the form of two "Request for Personnel Action" forms. Silbar did not submit any "Notice of Personnel Action" forms indicating that the personnel action in the form of increased hours had actually been taken. The AJ was correct in not crediting these unsubstantiated forms over Silbar's Individual Retirement Records, Standard Form 2806, the "basic record for action or all claims for annuity," 5 C.F.R. § 831.103(a).

■ Silbar's contention that she should be awarded credit for her volunteer service because she was a student-nurse is equally unavailing. Silbar was not a student-employee under 5 U.S.C. § 8332(b)(4). Pursuant to 5 U.S.C. § 5351(2), a "student-employee" is defined as one of several categories of medical professional students who are "assigned or attached" to a hospital, clinic, or mental or dental laboratory operated by an agency or some other category of student-employee who is "assigned or attached" to a similar type of medical facility and is "des-

694

ignated by the head of the agency with the approval of [OPM]." As the government indicates, there was no evidence submitted that when Silbar was seeking an Associate of Arts degree she was "attached or assigned" to a DVA facility by the college or university where she was seeking that degree. Indeed, the evidence shows the opposite. The hours for which Silbar seeks credit were when she worked at the hospital of her own volition, *i.e.*, as a volunteer.

We are not persuaded by Silbar's contention that granting service credit under CSRS to student-employees in DVA medical facilities, but not granting service credit to her for volunteer service, constituted a denial of constitutional equal protection under the Due Process Clause. Simply put, there are significant differences between the two groups–student–employees and volunteers–to warrant awarding service credit under CSRS for service as a student-employee, while denying it to individuals whose service is purely voluntary. A student-employee is formally assigned or attached to an agency medical facility at the direction of, and with the approval of, the head of the agency or his delegate. A student-employee appointed by the agency performs functions for the agency and is subject to agency supervision and control. A volunteer, on the other hand, continues to provide services only so long as he wishes to do so. A volunteer is not under the supervision and direction of the head of the agency to the same degree as a student-employee. Accordingly, the agency's failure to grant service credit under CSRS to Silbar was not a Due Process violation.