MOORE, Circuit Judge,
concurring.
I agree with the court that Mr. Gambill suffered no prejudice here. I write separately to respond to Judge Bryson’s concurrence. Unlike my colleague, I believe that due process requires that claimants of veterans’ benefits be provided with the opportunity to confront the doctors whose opinions DVA relies upon to decide whether veterans are entitled to benefits. As my colleague points out, DVA’s decision quite often turns on the content of these medical opinions. See Concurring Op. at 1322-23. DVA must decide which opinion to believe, and of course its final weighing of the evidence is essentially unreviewable. Confrontation should be a central part of due process here because it is necessary to help DVA understand the limitations of the opinions before it, and may be the veteran’s only route to undermine what could otherwise be unassailable evidence in favor of denying benefits.
Every circuit that has ruled on the issue has provided a similar confrontation right to claimants of social security disability benefits, either in the form of live testimony or written interrogatories. According to my colleague, veterans are not entitled to similar protections because the veterans’ benefits system is non-adversarial and tipped in favor of the veteran. But the paternalistic attributes of the veterans’ benefits system — many of which are shared by the social security system — militate toward providing more protection for veterans, not less. The availability of interrogatories to question the doctors who issue medical opinions adverse to the veteran are indisputably pro-elaimant — they only stand to help the veteran'explore and challenge an adverse medical opinion and ultimately prove their entitlement to claims. Although interrogatories may be “adversarial,” they are only necessitated by a medical opinion which stands to block the veteran from obtaining disability benefits. I posit that because a veteran only needs interrogatories to challenge an opinion that contradicts his claims of entitlement, the process is already adversarial by virtue of the opinion. Hence, interrogatories only give the veteran a chance to explore an opinion that has already been rendered against him.
There is no evidence whatsoever that a limited confrontation right would ultimately do more harm than good for the veterans’ benefits system. Lacking such a basis to restrict due process, and considering the crucial importance of these medical opinions, I do not agree that the government’s interests outweigh the veteran’s here. Interrogatories would serve mainly to help DVA get to the truth of the matter — whether the veteran is entitled to benefits.
The evidence at issue in this case is a two-page report written by a VHA ophthalmologist. The report is not typical of medical opinions relied upon by DVA because it did not reach any conclusion regarding Mr. Gambill’s condition. In fact, the VHA ophthalmologist rendered no opinions at all. After summarizing Mr. Gambill’s medical history, she made a factual statement: “I could find no reports suggesting head trauma was a cause or an associated risk factor in the development of cataracts.” Even if this statement had harmed Mr. Gambill’s prospects for obtaining benefits, confrontation would not have been of great value to him. In this narrow
*1325 and unusual circumstance, I agree with Judge Bryson that a far better response is to simply find and provide reports that suggest that head trauma can lead to cataracts, or better yet, a medical opinion that head trauma as likely as not caused Mr. Gambill’s cataract condition. See Concurring Op. at 1318-19. But I do not understand the concurrence to suggest that due process does not require the right of confrontation when the dispute is limited to factual statements asserting the absence of certain information in the medical literature. Rather, my colleague asserts that due process does not afford veterans the use of interrogatories or other forms of confrontation to challenge any medical expert opinion evidence. See id. at 1313, 1318-21, 1324. It is here that I disagree. Mr. Gambill’s case is not a “good illustration” of why confrontation does not further the veteran’s interests. Id. at 1318-19. Instead, Mr. Gambill’s case represents an unusual exception to the common situation where the outcome of the claim for benefits turns on a physician’s expert opinion relating to the veteran’s medical history and condition. And in this more common situation, I believe that due process affords veterans a means to challenge the opinion.[1]
A.
The right to confront adverse witnesses is fundamental to American legal process. As the Supreme Court explained:
Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government’s case must be disclosed to the individual so that he has an opportunity to show that it is untrue.... We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment which provides that in all criminal cases the accused shall enjoy the right “to be confronted with the witnesses against him.” This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, but also in all types of cases where administrative and regulatory actions were under scrutiny.
Greene v. McElroy, 360 U.S. 474, 496-97, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (citations and footnote omitted); see also Goldberg v. Kelly, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (“In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.”). The Supreme Court recently reaffirmed the vitality of this principle with regard to affidavits reporting the results of forensic analysis. Melendez-Diaz v. Mass., 557 U.S. -, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). Although the result in that case was commanded by the Sixth Amendment, id., 129 S.Ct. at 2536, the Court also observed that “neutral scientific testing” is not immune to fraud and incompetence, and that confrontation serves to test experts “honesty, proficiency, and methodology — the features that are commonly the focus in the cross-examination of experts,” id., 129 S.Ct. at 2536-38. Melendez-Diaz is a poignant and timely reminder of the *1326 central importance of confrontation no matter what form evidence may take. There is nothing special about the medical opinions relied upon by DVA that exempts them from this general rule. See Nieves-Rodriguez v. Peake, 22 Vet.App. 295, 302 (2008) (“Both VA medical examiners and private physicians offering medical opinions in veterans benefits cases are nothing more or less than expert witnesses.”).
In Richardson v. Perales, the Supreme Court applied these principles to social security disability claims, where just as here, “[t]he trier of fact has the duty to resolve [conflicting medical evidence].” 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Court held that the reports of medical experts were admissible evidence “subject as they are to being material and to the use of the subpoena and consequent cross-examination.” Id. at 410, 91 S.Ct. 1420. The Court explained that social security disability proceedings are informal, and noted that informality “is the obvious intent of Congress so long as the procedures are fundamentally fair.” Id. at 401, 91 S.Ct. 1420 (emphasis added).
Since Perales was decided, every circuit that has ruled on the issue has held that due process affords social security disability claimants either the right of cross-examination or the right to serve interrogatories as a means of challenging post-hearing medical reports. See Townley v. Heckler, 748 F.2d 109 (2d Cir.1984); Wallace v. Bowen, 869 F.2d 187 (3d Cir.1989); Lidy v. Sullivan, 911 F.2d 1075 (5th Cir. 1990); Flatford v. Chater, 93 F.3d 1296 (6th Cir.1996); Lonzollo v. Weinberger, 534 F.2d 712 (7th Cir.1976); Coffin v. Sullivan, 895 F.2d 1206 (8th Cir.1990); Solis v. Schweiker, 719 F.2d 301 (9th Cir.1983); Allison v. Heckler, 711 F.2d 145 (10th Cir.1983); Demenech v. Sec’y of Dep’t of Health & Human Servs., 913 F.2d 882 (11th Cir.1990). Interestingly, the courts reached these decisions despite the decidedly informal and non-adversarial nature of the social security disability system. See 20 C.F.R. § 404.900(b) (“In making a determination or decision in your case, we conduct the administrative review process in an informal, nonadversary manner.”). I can think of no justification for suggesting that veterans, who have borne the battle, are' entitled to less due process than social security disability applicants. See Hodge v. West, ■ 155 F.3d 1356, 1363 (Fed.Cir. 1998) (“[I]n the context of veterans’ benefits where the system of awarding compensation is so uniquely pro-claimant, the importance of systemic fairness and the appearance of fairness carries great weight.”); Forshey v. Principi, 284 F.3d 1335, 1360 (Fed.Cir.2002) (en banc) (Mayer, C.J1, dissenting) (explaining that the informality and non-adversarial character of veterans benefits proceedings is “equal, if not greater” than that of social security disability proceedings).
Although most of the circuits require an absolute right to cross-examination, some of the circuits chose a similar path to what Mr. Gambill proposes — allowing the agency to retain its discretion to issue subpoenas, but imposing an absolute right to interrogatories. See, e.g., Flatford, 93 F.3d at 1306 (“[T]he practice of using interrogatories to question medical witnesses appears to work well for discerning an applicant’s medical condition.”). I agree with Mr. Gambill that this would be the wiser course in the veterans disability context. See id. (“Because of the nonadversary nature of social security adjudications, the need to cross-examine every reporting physician is less crucial to the fairness and accuracy of the administrative law judge’s decision than it would be in an adversarial context.”). Interrogatories will not make the veterans disability claims process adversarial, because by the time a veteran has the need to question a doctor, that doctor has already provided an opinion adverse to the veteran’s inter *1327 ests — the system has already become adversarial. Interrogatories are the fair response.
The government has not offered any evidence that interrogatories would impose a significant burden on DYA. Nor do I think that the Board, the Veterans Court, or our court would be overly burdened with cases asking us to define the scope of the confrontation right. See Concurring Op. at 1320-21 (“Adopting Mr. Gambill’s position would virtually ensure that the Board, the Veterans Court, and this Court would be collectively launched into an ongoing line-drawing exercise regarding the number and character of the interrogatories that would have to be allowed.”). To the contrary, due process is a flexible concept, and DVA would have discretion over the particulars of the interrogatory process, subject to the Veterans Court’s review for abuse of discretion. See 38 U.S.C. § 7261. The interrogatories could be proffered by the veteran or even conducted informally by DVA. Moreover, in the social security context where nearly every circuit guarantees at least the right to interrogatories, there has been no explosion of cases over the scope of the confrontation right, whether it be the manner in which live cross-examination is conducted, or the number and substance of interrogatories. The dearth of such disputes in the social security context leaves little room for claims that interrogatories would become an overly burdensome judicial headache.
My colleague asserts that the social security “cases can be factually distinguished from this one on the ground that each of them involved examination reports assessing the particular claimant’s condition, not merely evidence as to a general medical principle, as in this case.” Concurring Op. at 1323. This reinforces the notion that the medical evidence offered is normally opinion evidence related to the claimant, not general medical fact evidence. Moreover, even if the bulk of the social security cases were directed to instances where the medical opinion pertained to the claimant’s condition, Judge Bryson’s argument is not that interrogatories ought to be permitted when the medical opinion pertains to the claimant and denied when the medical opinion is one of general medical principle. His opinion, as I understand it, is that there is no right to interrogatories in any of these cases. This would result in us deciding that veterans are entitled to less protection than that which our sister circuits have held applicants for social security disability benefits are entitled to.
B.
The Supreme Court’s decision in Walters v. National Association of Radiation Survivors, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985), is not contrary to my view. See Concurring Op. at 1313 (“Walters is highly pertinent to the issue before us and virtually dictates the proper disposition of the constitutional claim raised in this case.”). First, since the time Walters was decided, the veterans system has changed in material ways that render much of the Walters analysis inapplicable. Second, whereas in Walters the Court relied on evidence of undue burden on the government, here there is no evidence of burden. Finally, unlike the situation in Walters, there are no acceptable alternative safeguards for the due process right at issue.
In Walters, the Supreme Court addressed the constitutionality of 38 U.S.C. § 3404, the predecessor statute to 38 U.S.C. § 5904. Section 3404 imposed criminal penalties on an attorney who charged a veteran fees of more than $10 with respect to any one claim for monetary benefits. The Court held that this limitation did not violate due process, generally deferring to Congress’ goals of “wanting *1328 the veteran to get the entirety of the award” and wanting to avoid administrative burdens that would arise if “claimants were permitted to retain compensated attorneys.” Walters, 473 U.S. at 326, 105 S.Ct. 3180. Section 3404 and the Supreme Court’s ruling in Walters were consistent with the structure of the veterans benefits’ system at the time, which among other things afforded no judicial review for a denial of benefits. But since the time when Walters was decided, Congress has significantly altered the playing field. In 1988, the Veterans’ Judicial Review Act created the U.S. Court of Veterans Appeals, now called the U.S. Court of Appeals for Veterans Claims, which hears appeals from veterans who are dissatisfied with DVA’s decisions. Veterans’ Judicial Review Act, Pub.L. No. 100-687, 102 Stat. 4105 (1988). In the same act, Congress allowed attorneys to represent veterans at the CAVC. And in 2006, Congress removed the bar to legal representation before the DVA. Veterans Benefits, Health Care, and Information Technology Act, Pub.L. No. 109-461, § 101(c)(1)(A), 120 Stat. 3403, 3407 (2006) (codified at 38 U.S.C. § 5904(c)(1)). Now, attorneys may represent veterans any time after they file their notice of disagreement. See id. Thus, although the Supreme Court appropriately deferred to Congress’ judgment in 1985, Congress’ judgment has changed.
For better or worse, we have noted the increasingly adversarial nature of the veterans’ benefits system — the legal landscape has changed since Walters was decided. In Forshey, we held that our scope of review of the Veterans Court is narrow and that prudential concerns “severely limit the exercise of our authority to consider issues not raised or decided below.” 284 F.3d at 1338. The dissent lamented this outcome, arguing that just as in the social security context, a “judicially-imposed requirement of issue exhaustion is inappropriate ... because the parties have a non-adversarial relationship.” Id. at 1360 (Mayer, C.J., dissenting) (citing Sims v. Apfel, 530 U.S. 103, 108-10, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)). We noted that although proceedings before DVA are still non-adversarial, “under the 1988 legislation the system has changed from a nonadversarial, ex parte, paternalistic system for adjudicating veterans’ claims, to one in which veterans ... must satisfy formal legal requirements, often without the benefit of legal counsel, before they are entitled to administrative and judicial review.” Id. at 1355 (quoting Bailey v. West, 160 F.3d 1360, 1365 (Fed.Cir.1998) (en banc)). Congress could have chosen the path that the Forshey dissent urged, to “revisit its legislative handiwork and restore the veterans’ system to its original purpose set out by President Lincoln.” Id. at 1365. But instead, in 2006, Congress opened the doors of DVA to lawyers. If the Supreme Court was correct in its analysis in Walters, this development adds complexity to DVA proceedings. Recognizing a due process right to interrogatories is consonant with this “progress” because as veterans face more procedural hurdles, they need more tools to mitigate the risk that their claims for benefits will be wrongly denied.[2]
*1329 In Walters, the Court was not impressed with the prospects for legal representation to reduce the risk of an incorrect determination of benefits. See 473 U.S. at 327-34, 105 S.Ct. 3180. Notwithstanding the Court’s reasoning, Congress decided to allow this representation. Moreover, although “counsel is not required in various proceedings that do not approximate trials, but instead are more informal and nonadversary,” id. at 334, 105 S.Ct. 3180, interrogatories do not necessarily run counter to an informal and non-adversarial system. Rather, they would serve to help DVA get to the truth of central factual questions, for example, whether a medical condition is service-connected. See Taylor v. Ill., 484 U.S. 400, 411-12, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (“Discovery, like cross-examination, minimizes the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony.”). Furthermore, it is not clear why a modest number of uncomplicated interrogatories could not be administered in an informal manner by DVA. After all, DVA could not argue that its own statute and regulation affording it the power to issue subpoenas to compel the attendance of witnesses runs contrary to the informal character of benefits claims proceedings, see 38 U.S.C. § 5711; 38 C.F.R. § 20.711, and interrogatories are considerably less burdensome than live testimony. The government acknowledges that interrogatories would be less burdensome than live testimony, but argues without evidentiary support that interrogatories, too, would be exceedingly burdensome. Finally, in the legal counsel situation, there were substitute safeguards of due process; there is no such substitute for confrontation of medical opinions. See Walters at 473 U.S. at 333-34, 105 S.Ct. 3180 (“[T]he need for counsel is considerably diminished” where the veteran received “substitute safeguards such as a competent representative, a decision-maker whose duty it is to aid the claimant, and significant concessions with respect to the claimant’s burden of proof.”). DVA’s duty to assist and the veteran’s low burden of proof will not help the veteran at all if DVA has sought and relied upon a superficially convincing but ultimately inadequate medical opinion; this type of judgment is virtually impervious to review. Just the possibility of interrogatories will motivate DVA to examine medical opinions more thoroughly.
C.
The fact that the judgments are medical in nature only further reinforces the need for confrontation. See Concurring Op. at 1321-23 (“Another factor that supports the conclusion that due process does not require a right to serve interrogatories on medical experts has to do with the subject matter: medical judgments.”). Although the critical evidence is usually medical, the ultimate judgment within DVA (made by the Board of Veterans Appeals) is made by an administrative law judge using legal standards. See Nieves-Rodriguez, 22 Vet. App. at 300 (“[T]he Board decides, in the first instance, which of the competing medical opinions or examination reports is more probative of the medical question at issue.”). Even at the regional office level, ratings specialists are not permitted to make their own medical judgments — ever since 1991, DVA has been forbidden from making judgments on its own independent medical grounds. See Colvin v. Derwinski, 1 Vet.App. 171, 175 (1991), overruled on other grounds by Hodge, 155 F.3d at 1360. Thus, this decision is quite unlike the decision to commit a child to a state mental health care facility at issue in Par-ham v. J.R., which is made at the will of the admitting physician. 442 U.S. 584, 587-88, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). In Parham, the Supreme Court determined that this procedure did not violate due process, noting that the “mode *1330 and procedure of medical diagnostics procedures is not the business of judges. What is best for a child is an individual medical decision that must be left of the judgment of physicians in each case.” Id. at 608-09, 99 S.Ct. 2493. At DVA, Congress has mandated that the decision be left to the will of judges. This is precisely why interrogatories directed to medical opinions are important — to tell a non-physician administrative law judge when the medical evidence is flawed and should be supplemented or discredited. See Colvin, 1 Vet.App. at 175 (“If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions.”).
The Veterans Court recently explained in great detail how DVA should analyze medical evidence with reference to the Federal Rules of Evidence. See Nieves-Rodriguez, 22 VetApp. at 302 (“The Court agrees that [the Federal Rules of Evidence] are important, guiding factors to be used by the Board in evaluating the probative value of medical opinion evidence, and that this Court’s review of the Board’s evaluation of competing medical opinions will be enhanced by their application.”). The Veterans Court emphasized that a thorough analysis of the probity of medical opinions is critical even though “medical professionals offering medical opinions in veterans benefits cases do not typically testify subject to cross-examination.” Id. The two inquiries emphasized by the Veterans Court were “whether the medical expert is informed of sufficient facts upon which to base an opinion relevant to the problem at hand” and whether the physician properly applied reliable principles and methods in his analysis. Id. at 302-04. These are the foundations of any expert testimony, and although we should expect that the well-intentioned DVA will police them, the single best way to find the answers to these questions is to ask the doctor. Just a few interrogatories will likely cover the relevant foundational inquiries and address the concerns raised by the Veterans Court.
CONCLUSION
At bottom, the Mathews three-part test is not a rigid one. The Supreme Court’s opinion in Walters illustrates a thorough, evidence-based analysis to decide what due process requires. As my colleague correctly notes, Mr. Gambill did not provide evidence that there is a grave risk of error absent a right to submit interrogatories to physicians offering medical opinions. See Concurring Op. at 1318-19. Had we reached the issue, this would have hindered Mr. Gambill’s claim of a violation of due process under the Mathews test. But the evidence is equally scant on the question of government burden, and there is no dispute that the private interest — compensation of disabled veterans — is vital. Regardless, Mr. Gambill raises a very serious question on an issue of fundamental importance to due process, and I cannot agree that we should foreclose these arguments, or the opportunity for future veterans to develop evidence of the risk of error, especially in view of the government’s total lack of evidence that interrogatories would create a significant burden. To the contrary, for the reasons discussed, I believe that the submission of a small number of informal interrogatories to doctors by the veteran or administered by DVA would significantly further Congress’ goal of swiftly getting benefits into the hands of deserving veterans.

. The Supreme Court explained that "a process must be judged by the generality of cases to which it applies, and therefore a process which is sufficient for the large majority of a group of claims is by constitutional definition sufficient for all of them.” Walters v. Nat'l Ass’n of Radiation Survivors, 473 U.S. 305, 321, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). The inverse applies here — a process insufficient for most is insufficient for all.

. Although Congress did not provide veterans a right to interrogatories in 1988, see Concurring Op. at 1317-18, this single omission does not have any special significance among the unknown compromises that were made prior to enactment, see Buttrey Stores, Inc. v. United States, 179 Ct.Cl. 568, 375 F.2d 799, 802-03 (1967) ("To attempt to divine, therefore, just what meaning the omission of the subsection of the bill has is to engage in a fruitless task."). Further, placing too much weight on general statements in the 1988 legislative history that the process should remain informal ignores the fact that eighteen years later, Congress shifted course and decided that veterans would be better off with legal representation before DVA.