# United States Court of Appeals for the Federal Circuit

---

**JACK LADD, JOBETH LADD, JOHN LADD, MARIE LADD, GAIL A. LANHAM, JAMES A. LINDSEY, MICHAEL A. LINDSEY WILLIAM LINDSEY, CHARLIE MILLER, PAULINE MILLER AND RAYMOND MILLER,**
*Plaintiffs-Appellants,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-5010

---

Appeal from the United States Court of Federal Claims in 07-CV-271, Senior Judge Robert H. Hodges, Jr.

## ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

---

JAMES D. GETTE, Attorney, Environment and Natural Resources Division, United States Department of Justice, of Washington, DC, filed a combined petition for panel rehearing and rehearing en banc for defendant-appellee. With him on the petition was IGNACIA S. MORENO, Assistant Attorney General.

MARK F. (THOR) HEARNE, II, Arent Fox LLP, of Washington, DC, filed a response to the petition for plaintiffs-appellants. With him on the response were MEGHAN S. LARGENT and LINDSAY S.C. BRINTON.

GREG W. REILLY, Morrison & Foerster LLP, of San Diego, California, for amicus curiae Rails-To-Trails Conservancy. Of counsel on the brief was ANDREA C. FERSTER, Rails-To-Trails Conservancy, of Washington, DC.

---

Before RADER, *Chief Judge*, NEWMAN, LOURIE, BRYSON, GAJARSA, LINN, DYK, PROST, MOORE, O'MALLEY, and REYNA, *Circuit Judges*.

PER CURIAM.

GAJARSA, *Circuit Judge*, with whom MOORE, *Circuit Judge*, joins, dissents from the denial of the petition for rehearing en banc.

## ORDER

A combined petition for panel rehearing and rehearing en banc was filed by Defendant-Appellee, and a response thereto was invited by the court and filed by Plaintiffs-Appellants. The court granted leave to Rails-To-Trails Conservancy to file a brief amicus curiae.

The petition for panel rehearing was considered by the panel that heard the appeal, and thereafter the petition for rehearing en banc, response, and brief amicus curiae were referred to the circuit judges who are authorized to request a poll of whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1)  The petition of Defendant-Appellee for panel rehearing is denied.

(2)  The petition of Defendant-Appellee for rehearing en banc is denied.

(3)  The mandate of the court will issue on June 2, 2011.

FOR THE COURT

<u>May 26, 2011</u>
Date

<u>/s/ Jan Horbaly</u>
Jan Horbaly
Clerk

# United States Court of Appeals for the Federal Circuit

---

**JACK LADD, JOBETH LADD, JOHN LADD, MARIE LADD, GAIL A. LANHAM, JAMES A. LINDSEY, MICHAEL A. LINDSEY, WILLIAM LINDSEY, CHARLIE MILLER, PAULINE MILLER,**
AND **RAYMOND MILLER,**
*Plaintiffs-Appellants,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-5010

---

Appeal from the United States Court of Federal Claims in case no. 07-CV-271, Senior Judge Robert H. Hodges, Jr.

GAJARSA, *Circuit Judge*, with whom MOORE, *Circuit Judge*, joins, dissenting from the denial of the petition for rehearing en banc.

---

I respectfully dissent from this court's denial to rehear this case en banc. The refusal allows our precedent in *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004), and *Barclay v. United States*, 443 F.3d 1368 (Fed. Cir. 2006), to stand as the law of this circuit. Thus, we main-

tain and perpetuate an egregious legal error. Our rules require us to follow precedent, albeit erroneous. Here, we continue to follow the requirement that the accrual date for the statute of limitations of the physical taking in "Rails-to-Trails" Fifth Amendment takings claims is the date that the Notice of Interim Trail Use or Abandonment ("NITU") is issued. Because *Caldwell* and *Barclay* failed to consider the varying outcomes stemming from the issuance of an NITU, which could result in either a permanent, physical taking or a temporary, regulatory taking, this court should have availed itself of the opportunity to correct this flawed precedent.

The result in *Ladd* was required by this court's prior precedent in *Caldwell* and *Barclay*. Although some members of this court may have been reluctant to consider this issue en banc because neither party directly challenged the holdings of those cases, it is clear law that "'[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.'" *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002) (en banc), *superseded by statute on other grounds*, Pub. L. No. 107-330, § 402(a), 116 Stat. 2820, 2832 (2002), (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)); *see also City of Sherrill, New York v. Oneida Indian Nation of New York*, 544 U.S. 197, 214 n.8 (2005) (resolving the "case on considerations not discretely identified in the parties' briefs" because the issue was "inextricably linked to, and . . . thus 'fairly included' within, the questions presented" (citations omitted)); *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 518 F.3d 1353, 1359 n.5 (Fed. Cir. 2008) (reaching an issue that was "a predicate legal issue necessary to a resolution of the issues before the court"). Thus, despite the reluctance

of some members of this court, the Government's challenge of the type of taking that resulted from the issuance of an NITU in *Ladd* also indirectly challenged the holdings of *Caldwell* and *Barclay* that made the NITU's issuance the triggering event for the statute of limitations in Rails-to-Trails cases.

The purpose of the National Trails Systems Act ("Trails Act") "was to preserve unused railroad rights-of-way by converting them into recreational trails" through the issuance of an NITU, which "stay[s] railroad abandonment during the pendency of trail use." *Barclay*, 443 F.3d at 1371. An NITU "is issued after the trail operator and the railroad indicate their intention to negotiate an agreement [concerning use of the railroad's right-of-way,] but prior to the finalization of [that] agreement." *Caldwell*, 391 F.3d at 1230. If an agreement is reached, the NITU "extends indefinitely for the duration of recreational trail use," but if no agreement is reached, the NITU "'automatically converts into an effective . . . notice of abandonment,' which permits the rail carrier to 'abandon the line entirely.'" *Id.* (quoting *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 7, 7 n.5 (1989)).

The Supreme Court has stated that "the Fifth Amendment itself provides a basis for drawing a distinction between physical takings and regulatory takings." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321 (2002). "The government effects a physical taking only where it *requires* the landowner to submit to the *physical occupation* of his land." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 527 (1992) (second emphasis added); *see also Tuthill Ranch, Inc. v. United States*, 381 F.3d 1132, 1136 (Fed. Cir. 2004) ("[T]he *sole* question governing physical takings is whether or not the government has physically occupied the plaintiff's property." (emphasis added)).

Following *Caldwell* and *Barclay*, this case held that a physical taking "occurs when state law reversionary property interests are blocked." *Ladd v. United States*, 630 F.3d 1015, 1023 (Fed. Cir. 2010) (citations omitted). The issuance of an NITU, however, does not itself automatically result in a physical taking and could instead only be a temporary, regulatory taking. In fact, there may never be a physical taking after the NITU issues. Our precedent, however, assumes that the issuance of an NITU is a physical taking. In *Caldwell*, we held that "the appropriate triggering event for any takings claims under the Trails Act occurs when the NITU is issued." 391 F.3d at 1235. In *Barclay*, we reiterated this finding by stating that "we adhere to *Caldwell* and hold that the issuance of the original NITU triggers the accrual of the cause of action." 443 F.3d at 1378. Takings claims, however, "accrue on the date when all events have occurred that fix the alleged liability of the Government and entitle the plaintiff to institute an action." *Seldovia Native Ass'n, Inc. v. United States*, 144 F.3d 769, 774 (Fed. Cir. 1998) (internal quotation omitted). Thus, in Rails-to-Trails cases, the key date for accrual purposes is the date an agreement for trail use is finalized or the date the right-of-way is abandoned.

Rails-to-Trails cases can have two different types of takings: (1) a regulatory taking triggered by the issuance of the NITU, or (2) a physical taking consummated by the actual conversion to a trail. We acknowledged in *Caldwell* that "the NITU operates as a single trigger to several possible outcomes. . . . It is not unusual that the precise nature of the takings claim, whether permanent or temporary, will not be clear at the time it accrues." 391 F.3d at 1234. Despite this perceptive statement, *Caldwell* and *Barclay* oversimplify this distinction by ignoring whether trail use (a permanent, physical taking) or abandonment

(a temporary, regulatory taking) results from the issuance of an NITU.  In both *Caldwell*, and *Barclay*, a public trail was established after the issuance of an NITU, and thus, a physical taking was effectuated.  *See Caldwell*, 391 F.3d at 1231–32; *Barclay*, 443 F.3d at 1372.  There, the date the physical taking claim accrued, and thus the trigger for the statute of limitations, was the date of the conversion to trail use.  In *Ladd*, however, no public trail was ever established, meaning that no physical taking occurred.  The result in *Ladd* illustrates that it is an erroneous premise to start the clock on the statute of limitations for a Rails-to-Trails takings claim anytime an NITU issues.  Where no public trail is established after the issuance of an NITU, there has been a temporary, regulatory taking that must be analyzed under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), rather than physical takings law.  *See Tahoe-Sierra*, 535 U.S. at 323 ("Th[e] longstanding distinction between acquisitions of property for public use, on the one hand, and regulations prohibiting private uses, on the other, makes it inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa."  (footnote omitted)).

The takings law of this circuit, as articulated by *Caldwell* and *Barclay*, could have been recalibrated by rehearing this case en banc, the only method available to this court to correct its erroneous precedent.  Thus, by failing to grant the petition for rehearing en banc, the court chooses to allow a plainly flawed precedent to propagate itself, subjecting parties to an incorrect finding of a physical taking even when no public trail is established.  For these reasons, I dissent.